[Civ. No. 34660. Second Dist., Div. Four. May 26, 1970.]

THERESA LeGRAND et al., Plaintiffs and Appellants, v.
YELLOW CAB COMPANY OF SAN GABRIEL VALLEY et al.,
Defendants and Respondents.

## COUNSEL

Radcliffe & Croak, Kate Whyner and Thomas E. Croak for Plaintiffs and Appellants.

LaFollette, Johnson, Horgan & Robinson, B. E. Atkisson and Roger Bentley for Defendants and Respondents.

## OPINION

IRWIN, J.*—This is an appeal from judgments of nonsuit in personal injury and wrongful death cases arising out of a series of freeway collisions. Plaintiffs brought these actions against defendants Patrick, Smith, and the Yellow Cab Company of San Gabriel Valley as Doe No. 16. Paul K. White was named as a defendant, but apparently was not served. The appeal as to the defendant Smith has been dismissed.

The facts most favorable to the plaintiffs are: On August 15, 1962, at about 8 p.m., a Ford automobile had gone out of control and came to rest crosswise of the No. 1 westbound lane of the San Bernardino Freeway near Kellogg Hill. Highway Patrol Officer Byron W. Taylor, who had been sent to investigate this accident, parked his patrol car near the center divider partially in the westbound lane easterly of the aforesaid Ford and had placed flares to warn oncoming traffic. Plaintiff Theresa V. LeGrand and her husband, driving in a 1961 Corvair westbound in the No. 1 lane, came to a stop behind the patrol car and then their vehicle was struck in the rear causing it to be pushed forward into the patrol car. Mrs. LeGrand was injured and her husband died as the result of the accident. A few seconds before the Corvair impact, a taxicab, owned by the defendant Yellow Cab Company of San Gabriel Valley and driven westerly by Paul K. White in the course of his employment, was behind the Corvair also

---

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.

in the No. 1 lane and was struck in the rear by a Buick owned and operated by defendant Langdon W. Patrick. The Buick, after impact, spun around, traversed the freeway and ultimately struck the patrol car. Next in sequence were impacts involving a 1956 red and white Ford driven by Mandel Berkovitz and a 1951 Chrysler driven by Mrs. Frieda Selma Smith.[1]

Additional facts gleaned from the testimony of the witnesses are as follows:

Mrs. LeGrand testified that she remembered being struck from the rear but did not see the vehicle that did it.

Officer Taylor, called out of order as a witness by the defendants, testified that he did not see any car strike the Corvair, but he saw something strike his patrol car and saw the Corvair move or spin away from it. An interval of four to ten seconds later he heard a crash and then observed the Buick collide with the patrol car. He did not see the Buick strike the Yellow Cab or the Corvair.

Richard Wayne Logan, another highway patrol officer who was sent to investigate the accident, testified, as did Berkovitz. However, neither was able to testify as to the manner in which plaintiffs' vehicle was hit from behind. There were no other witnesses at the trial.

Paul K. White, driver of the taxicab, did not appear as a party to these actions and was not present at the trial. By stipulation portions of his deposition were read. Therein White testified: he had come to a complete stop five feet behind the plaintiffs' car, but not squarely behind; he wanted to turn into the No. 2 lane but wasn't able to because of traffic flow; he was hit by a 1959 black Buick; he was not pushed into plaintiffs' car but was pushed completely off the freeway and came to rest on the northerly shoulder; approximately one minute after being struck by the Buick and while sitting in his cab on the aforementioned shoulder he saw a 1955 Ford strike the Corvair but could not remember the color of the Ford; and there was no damage to the front of the taxicab.

▌ There was no evidence to identify either the Yellow Cab or Patrick's Buick as being involved, directly or secondarily, in a collision with the plaintiffs' Corvair; and no proof that negligence of either White or Patrick was a proximate cause of injury or damage to plaintiffs. Based on this evidence the nonsuits were properly granted.

▌ However, plaintiffs contend that the court erroneously excluded

---

[1] In separate actions Officer Taylor sued Patrick, Berkovitz, Smith and White; White and Smith each brought an action naming Patrick as defendant. These cases were dismissed.

a prior inconsistent statement of Paul K. White which they assert would be sufficient to create liability against both the defendant Yellow Cab Company and the defendant Patrick. Through White's deposition, plaintiffs proffered, as substantive evidence,[2] an unsworn inconsistent statement set forth in a document entitled "Answers to Interrogatories of Paul K. White" dated June 29, 1963. This document had been filed in a separate action in which White had sued Patrick for injuries alleged to result from this accident. White admitted that his signature appeared on the document but he denied knowledge of the interrogatories and denied that he had made the statement attributed to him in response to question No. 5, which was:

"5. State whether or not you recall the facts of the accident. a) If you do, relate the facts of the accident."

The answer was: "Yes; I was going westbound on the San Bernardino Freeway when I spotted flares on the left hand lane. I reduced my speed and came to a complete stop behind a Corvair when a black 1959 Buick came up behind me and struck me from the rear, pushing me into the Corvair and also into the next lanes of traffic, until I was off the freeway on the right hand side. The Buick spun around and went back across the freeway and ran into a highway patrol car."

The answers to the interrogatories were not under oath.[3] However, no oath is required for prior inconsistent or consistent statements under Evidence Code sections 1235, 1236. Defendants' objection to this statement was sustained after a hearing in chambers, outside the presence of the jury, when the court considered the following testimony of White from his deposition: "Q. Mr. White, these written interrogatories that we have talked about in the case before, did you ever sign your answers to those?

"A. I was in the Rehabilitation Guidance Center in Chino, and my counsellor called me into the office and said, 'Sign this.'

"Q. Who was your counsellor?

"A. The name was Mrs. Smith. I don't remember her first name.

"Q. Was she from the office of Wank & Wank?

---

[2]Evidence Code section 1235 is designed to allow evidence of a witness's prior inconsistent statement not only to impeach the witness but also for the truth of the statement's contents in civil cases. (*People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599. 441 P.2d 111]; *People* v. *Hopper* (1969) 268 Cal.App.2d 774 [75 Cal.Rptr. 253].)

[3]Answers to interrogatories must be under oath and, to be admissible as such, must be those of a party to an action on trial, not of a party in a separate action. (Code Civ. Proc.. § 2030, subd. (a); *Associates Discount Corp.* v. *Tobb Co.* (1966) 241 Cal.App.2d 541, 551 [50 Cal.Rptr. 738].)

"For the Court's knowledge, Wank & Wank represented White in his plaintiff's action.

"A. No; she works for the State of California. She is a correctional counsellor.

"Q. Did she just present the answers to you? Were there questions, also?

"A. Just the answers, just to one of these things (indicating).

"Q. You are pointing to a legal document in your counsel's file there?

"A. Yes.

"Q. Did you read these answers before you signed them?

"A. No.

"Q. So that the answers as given there were not, in fact, your answers; is that correct?

"A. I don't—I don't even know. I didn't read it. She just said, 'Sign here. I'll mail it to your attorney.'

"Q. Under the particular circumstances, you just signed it without reading it; is that correct?

"A. That's correct.

"Q. And you never did read the questions or the answers themselves, is that correct?

"A. That's correct.

"Q. And so you don't know if the answers filed in that were the answers in fact signed by you, do you?

"A. No.

"Q. In other words, they might have been answers made by somebody else?

"A. Could have been.

"Q. All right. Did you ever get any correspondence from the office of Wank & Wank—

"A. Yes, I did.

"Q. Excuse me. I hadn't finished my question.

"A. I am sorry.

"Q. —correspondence in connection with those written interrogatories about which we have been talking?

"A. Not that I can remember, no.

"Q. They never sent you a letter in connection with those at all?

"A. Not that I can remember.

"Now directing your attention to page 72 of the same deposition at line 19, and this is a question by Mr. Kirkpatrick who at that time represented Mr. Croak.

"Q. BY MR. KIRKPATRICK: Now, at that time that you signed this document, had you read the document?

"A. I had not.

"Q. Had you read the interrogatories to which these purported to be in answer?

"A. I didn't hear what your first cause was.

"Q. This document is answers to interrogatories.

"A. Yes.

"Q. At the time that you signed this document, had you read the interrogatories to which these answers related?

"A. I did not.

"Q. Could you tell us why you didn't read the answers before you signed it?

"A. Why I didn't read the answers? They just told me to sign it, so I just signed it. They just opened it up to the page and said, 'Sign here.'

"Q. Were you shown any correspondence or any notes or anything from your attorneys relating to these interrogatories?

"A. I wasn't shown anything.

"Q. Did you ask for any explanation as to why you were asked to sign these?

"A. She just—the counsellor told me that, 'This is from your attorney and he wants you to sign it. Sign here.' And I signed it."

The crucial question for decision on appeal is whether there was in the record before the trial court sufficient evidence to justify the admission

of the answer to the aforesaid question No. 5. Our decision must be controlled by sections 402 and 403 of the Evidence Code.[4]

 Under section 403, subdivision (a) the proffered evidence "is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact," to wit: whether the witness White made the statement as an answer to question No. 5. The exclusion of this evidence implies a finding that the evidence was not sufficient. A formal finding is unnecessary. We find no reason to disturb that ruling. (Evid. Code, § 402, subd. (c).)

It may be argued that White's admitted act of signing the document containing the answers to interrogatories raised a presumption that he had knowledge of the contents and that he had adopted the statements therein set forth as his own. If so, this presumption was dispelled by the only evidence in the record—his denial and prompt but thorough explanation of the manner in which the document was presented to him for signature. It should be noted that there was no evidence before the court opposing White's testimony in this respect; no evidence that the document was read to him or that he prepared it, or that anyone had informed him of its contents. (Obviously his lawyer was the author of the language.) It should be noted also that White made his denial and explanation on June 29, 1963, more than five years before the date of trial. Plaintiffs, who had the burden of producing evidence as to this preliminary fact (Evid. Code, § 403, subd. (a)), had ample opportunity to produce additional evidence, if any, to contradict White in this respect. If there was a presumption, it was dispelled by the uncontradicted testimony of White which was wholly irreconcilable with the presumption. (See Witkin, Cal. Evidence (2d ed.

---

[4] "§ 402. (a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.

"(b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; . . .

"(c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute."

"§ 403. (a) The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when:

"(1) The relevance of the proffered evidence depends on the existence of the preliminary fact;

"(2) The preliminary fact is the personal knowledge of a witness concerning the the subject matter of his testimony;

"(3) The preliminary fact is the authenticity of a writing; or

"(4) The proffered evidence is of a statement or other conduct of a particular person and the preliminary fact is whether that person made the statement or so conducted *himself*."

1966) § 215, p. 195.) A presumption itself is not evidence. (Evid Code, § 600, subd. (a).) Thus, the trial court properly excluded the statement.

█ We do not hold that the trial judge could weigh the evidence and finally decide whether White did or did not make the statement, for had the evidence been admissible there would have been a question of fact for the jury to decide. (Evid. Code, § 403, subd. (b).) The sole duty of the trial judge was to decide whether there was sufficient evidence to submit the question to the jury. It was stated in *Granville* v. *Parsons* (1968) 259 Cal.App.2d 298, 304 [66 Cal.Rptr. 149]: "Whether or not evidence tendered to affect the credibility of a witness is admissible depends on a preliminary ruling by the trial court that such evidence would be sufficient to sustain a finding that the witness' credibility is, indeed, affected thereby. (Evid. Code, § 403.) If a reasonable trier of fact may so believe the trial judge must—other consideraitons aside—admit the evidence even if it would not affect his own evaluation of the witness' credibility. (See comment to Evid. Code, § 403: 'Hence, the judge's function on questions of this sort is merely to determine whether there is evidence sufficient to permit a jury to decide the question.') In order to make its ruling, the court may have to take evidence outside the hearing of the jury."

Since we have concluded that there was no error in excluding the proffered evidence the judgments of nonsuit were proper. Discussion of other contentions and arguments of the parties are obviated by this ruling.

The judgments are affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.