[Crim. No. 16315. First Dist., Div. Four. Jan. 24, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM GAIL POTTER, Defendant and Appellant.

COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Michael G. Millman, Philip M. Brooks and Phyllis J. Hamilton, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stern and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHRISTIAN, J.—William Gail Potter appeals from a judgment of imprisonment which was rendered after a jury found him guilty of forcible rape (Pen. Code, § 261).

Appellant was arrested shortly after he had, while intoxicated, broken into an apartment where he beat, raped and committed sodomy upon a mentally retarded and partially blind woman.

Appellant testified that a woman invited him into her room and "that's the last thing I remember 'til I was arrested."

Appellant contends, citing *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], that the court should have inquired further before rejecting a request by appellant to discharge appointed counsel and have new counsel appointed. The incident complained of, which occurred at the beginning of the trial, is reflected in the following passage from the record:

"THE COURT: Mr. Potter, what is your problem?

"THE DEFENDANT: The other problem is I was wondering if the court was aware that I had a motion sent down for motion to fire Joe Allen.

"THE COURT: What do you want?

"THE· DEFENDANT: Because I don't feel I'm going to get an adequate case.

"THE COURT: On what basis do you make that claim?

"THE DEFENDANT: On the basis I feel there is prejudice.

"THE COURT: Do you have any evidence to support your feeling?

"THE DEFENDANT: No, I don't, your Honor, except that we just had a little misunderstanding up there in the jail just a minute ago, and I don't want Mr. Joe Allen as my attorney. And before, I have not talked to him, I have not seen him very many times as to the things of my case; and I don't feel that I'm going to get an adequate defense.

"MR. ALLEN: Can I ask the defendant a few questions?

"THE COURT: Well, the court will. First of all, Mr. Allen has represented you in previous proceedings; is that correct?

"THE DEFENDANT: That's correct.

"THE COURT: Secondly, Mr. Allen, have you prepared to go to trial at this time?

"MR. ALLEN: Yes, Your Honor.

"THE COURT: Well, request to relieve the public defender on the day of trial will be denied. The court will make the finding that the public defender in the court's experience is a competent and able counsel and there appears to be no good or adequate reason to relieve him at this stage of the proceedings.

"The court further makes the finding that no evidence of prejudice has been presented that would be sufficient as to justify relieving counsel and appointing someone else.

"THE DEFENDANT: Your Honor, I still want to know if my motion was seen by you in court?

"THE COURT: When you're represented by counsel, Mr. Potter, if I see a motion I refer it to counsel. The court is acquainted with—you've appeared in court before, as I recall. You're now 18 or 19 years of age?

"THE DEFENDANT: Yes.

"THE COURT: And the court is of the view, based upon extensive experience, in your case that you would not be capable of representing yourself in a proceeding. Two, that you do have able and adequate counsel; and for that reason the court will make the finding that it has heretofore made.

"THE DEFENDANT: I refuse to have Joe Allen as my attorney. I will not have him as my defense during a jury trial. We've had a misunderstanding upstairs and I feel I'm going to get railroaded, in anything.

"MR. ALLEN: Would you explain what you mean by that, by misunderstanding?

"THE DEFENDANT: For the record I've never seen anybody that has went back to the streets after having Mr. Joe Allen. Are you running for district attorney?

"MR. ALLEN: There isn't any election this year.

"THE COURT: I've seen a good number on the streets. Mr. Allen does an adequate job. If you in any way disrupt the proceedings so that the case cannot proceed, the court would have to take adequate precaution to remove you from the courtroom. If you wish the case presented as adequately as I know Mr. Allen can, then within the circumstances we can proceed to trial. If you disrupt the proceedings in any way it will only result in compelling the court to remove you from the courtroom and make a determination whether or not there should be another mistrial. Do you understand what I mean?

"THE DEFENDANT: I don't think it's right, and I'm pretty sure it is that you have a right to fire an attorney if you don't want him. If you don't feel—

"THE COURT: The court has to make—first of all, you're entitled to an attorney at all stages of the proceedings against you; and if you cannot afford an attorney an attorney will be appointed to represent you if you don't feel you're getting adequate defense, and that has been done. And the court has appointed a competent trial counsel to represent you. Your constitutional rights have been adequately served. The law at no place gives you the unfettered right to determine who should act in the case, and the determinations have been made in this case.

"MR. ALLEN: Mr. Potter indicated two things to me that I want to bring to the court's attention. One is that he's willing to continue the trial, or at least he told me that he was upstairs, for the purpose of substituting counsel. I don't know if that's still his present feeling. At one time he was totally unwilling to waive the 30-day time limit for retrial, and today I think is the 28th or 29th of the 30 days. So obviously if Mr. Potter was unwilling, no substitution would be possible because no other attorney could be ready two days from now. On the other hand, I don't really know what Mr. Potter's wishes are in that regard.

"Mr. Potter?

"THE DEFENDANT: What do you mean by that?

"THE COURT: Well, the court makes the finding the case has been set for trial; we have all the witnesses; we're ready to go and there is no reason for a continuance."

In *Marsden,* where the trial court refused to allow the defendant to state any specific complaints against his counsel, the Supreme Court reversed, pointing out that "[a] trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request." (2 Cal.3d at p. 123; also see *People* v. *Lewis* (1978) 20 Cal.3d 496[143 Cal.Rptr. 138, 573 P.2d 40].) The present record, quoted above bears no resemblance to the *Marsden* situation. Here, the court did not refuse to hear specific complaints. On the contrary, the court addressed to appellant questions designed to bring out any specific complaints he might have: "Mr. Potter, what is your problem?" "What do you want?" "On what basis do you make that claim?" "Do you have any evidence to support your feeling?" Although no complaints of consequence were elicited by these questions, at no time did the court preclude appellant from stating reasons for wishing to have new counsel.

In a related contention appellant argues that the refusal of the court to appoint new counsel amounted to denial of appellant's Sixth Amendment right of self-representation (citing *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]). But the record reflects no unequivocal expression of desire to appear as his own attorney. Moreover, the claimed assertion of the right of self-representation did not come "within a reasonable time prior to the commencement of trial" (see *People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187]). Thus, there was no deprivation of Sixth Amendment right.

█ Finally, appellant contends that it was error for the court to reject a request by defense counsel for an instruction (CALJIC No. 4.25) putting to the jury the question whether, by reason of voluntary intoxication, appellant might not have known that he did not have the victim's consent and thus might not have possessed the mental state required for a conviction of rape or sodomy. █ But rape and sodomy are general intent crimes (*People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], cert. den., 420 U.S. 924 [43 L.Ed.2d 393, 95 S.Ct. 1118]; *People* v. *Franklin* (1976) 56 Cal.App.3d 18 [128 Cal.Rptr. 94]). Thus, inability by reason of intoxication to form specific intent would not be a defense. █ If, as a result of self-induced intoxication, appellant believed that the victim was consenting, that belief would not thereby become either "reasonable" or "in good faith" (cf. *People* v. *Parks* (1971) 4 Cal.3d 955, 960 [95 Cal.Rptr. 193, 485 P.2d 257]; *People* v. *Hood* (1969) 1 Cal.3d 444, 457 [82 Cal.Rptr. 618, 462 P.2d 370]). It was not error to refuse the requested instruction.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 23, 1978.