[Crim. No. 11204. Fourth Dist., Div. One. Feb. 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
NEAL JOSEPH GUTHREAU, Defendant and Appellant.

438

COUNSEL

P. Edward Fort, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen, Steven V. Adler, Jay M. Bloom and Gary W. Schons, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

STANIFORTH, J.—A jury convicted Neal Joseph Guthreau of forcible rape (Pen. Code, § 261) and oral copulation by force and violence (Pen. Code, § 288a, subd. (c)). On trial, Guthreau's defense was that the prosecutrix, Kathleen R., consented to the act of intercourse. Guthreau denied any oral copulation. On appeal, Guthreau contends the trial court committed reversible error in (1) allowing expert witness testimony of a police officer stating her opinion the resistance displayed by Kathleen was reasonable under the circumstances, (2) refusing to instruct the jury pursuant to proffered defense instructions embodying mistake of fact (CALJIC No. 4.35), diminished capacity (CALJIC No. 3.35), and voluntary intoxication when relevant to knowledge (CALJIC No. 4.25), (3) instructing the jury voluntary intoxication is not a defense (CALJIC No. 4.20), (4) instructing the jury that if as a result of self-induced intoxication Guthreau believed he had consent, this belief would not constitute a viable defense unless under the circumstances the belief was reasonable and in good faith, (5) prohibiting inquiry into Kathleen's prior sexual conduct with others than Guthreau offered to establish that Guthreau's "consent" belief was reasonable and bona fide, and finally (6) permitting cross-examination of defense witness as to specific aggressive acts of Guthreau.

FACTS

Guthreau does not challenge the sufficiency of the evidence to support the jury verdicts of guilty. Nevertheless our conclusions as to certain of Guthreau's contentions of legal error require an assessment of the strength of evidence admitted. Kathleen R. resided in a two-bedroom house with an adjoining converted garage in Ocean Beach,

San Diego, California. She shared the house with Robert Hoffman, who occupied the other bedroom, and Judith Peterson, the occupant of the garage. The backdoor of the house was kept unlocked to afford Ms. Peterson access to the only bathroom.

Guthreau was a friend of Hoffman and frequently visited Hoffman at his shared house. On these occasions, Kathleen refrained from socializing with Guthreau. She had expressed a dislike for him and Guthreau knew of Kathleen's dislike.

In the early morning hours of August 11, Kathleen was awakened when Guthreau appeared naked, uninvited in her bedroom, lying on her bed beside her. She recognized Guthreau as one of her roommate's friends and demanded he leave her room. She realized Guthreau was naked and attempted to flee her room clad only in her nightshirt.

Guthreau grabbed her arm forcibly, threw her upon the bed. As she began to scream, he clasped his hand over her mouth, pushing her head to the mattress and commanded "You are going to do what I want you to do." Guthreau smelled strongly of alcohol; Kathleen feared he would rape and hurt her.

Next, Guthreau placed his finger inside the prosecutrix's vagina; she strongly objected—he was hurting her. Her plea was to no effect. Guthreau told her to remove her nightshirt. When she refused, he began to do it himself. Then he commanded "Spread your legs" to which Kathleen responded "No." In this context of brutal force and threat of force, Kathleen acquiesced. Guthreau was impotent, unable to insert his penis. He asked Kathleen to help him. She refused. Instead, she attempted to dissuade him from intercourse by telling him she had a Herpes viral infection.

Guthreau then ordered Kathleen to orally copulate with him. She refused, but after continued insistance she finally acquiesced. Once he had an erection, he completed an act of intercourse. Guthreau arose, went to the kitchen, seeking his clothing. Kathleen followed him to seek a positive identification, turned on a light. Guthreau admonished "No lights, no lights." In nightshirt, Kathleen ran into the street, flagged down a motorist and immediately reported Guthreau's deeds to the police.

Guthreau first denied any sexual contact with Kathleen but later admitted having intercourse but, he contended, under a reasonable and good faith belief Kathleen consented. He denied threatening Kathleen in any way or forcing her to orally copulate. He stated she assisted him in accomplishing the act of intercourse. He further testified based upon prior representation by her roommate Hoffman as to her sexual habits, Guthreau believed she consented.

The jury verdict reflects an acceptance of Kathleen's testimony and rejection of Guthreau's. Guthreau does not challenge the sufficiency of evidence to support the jury verdict.

DISCUSSION

I

Guthreau contends the trial court erred by allowing the police expert on rape to testify to the effect the degree of resistance displayed by Kathleen was entirely reasonable under the circumstances.

Guthreau testified Kathleen consented to intercourse; the issue at trial focused on whether the victim's resistance was such as to make "reasonably manifest" her refusal to engage in the acts in question. (*People v. Hunt* (1977) 72 Cal.App.3d 190, 194 [139 Cal.Rptr. 675]; *People v. Nash* (1968) 261 Cal.App.2d 216, 224 [67 Cal.Rptr. 621].) "While generally the woman has the power to determine for herself the extent to which she feels she can safely resist [citation], her conduct must always be measured against the degree of force manifested and each case must be resolved on all of the circumstances present. [Citations.]" (*People v. Hunt, supra,* at p. 194.)

■ Thus, the issue was not whether in some abstract sense the victim's resistance was reasonable. The critical inquiry is whether the resistance was sufficient to *"reasonably manifest"* her refusal to Guthreau.

■ If the defendant had a bona fide *reasonable* belief based upon "all of the circumstances present" that the prosecutrix voluntarily consented, the defendant must be acquitted of forcible rape irrespective of how reasonable an expert views the victim's resistance under the circumstances. (See *People v. Mayberry* (1975) 15 Cal.3d 143, 156 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People v. Hunt, supra,* 72 Cal.App.3d

190, 194.) Evidence that an expert was of the opinion the prosecutrix's resistance was reasonable under the circumstances is irrelevant to the issue of *Guthreau's bona fide belief.*

Although the admitted evidence was irrelevant, this reviewing court must next inquire whether "'after an examination of the entire cause, including the evidence,' [it] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [229 P.2d 243]; Evid. Code, § 353.)

Here, no such conclusion is possible. Implicit in our determination the "expert's" testimony was irrelevant is the further conclusion the testimony had no probative value. (See generally Witkin on Evidence, § 302, p. 266.) Nor is the evidence of such a nature as to disturb the jury's evaluative process—its admission does not logically cause a "tilt," build an unfairness into the jury process. Guthreau does not contend the introduction of the expert's testimony created "substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; Witkin on Evidence, §§ 308-309, pp. 272-273.) We conclude the error was harmless.

## II

Next, Guthreau claims error in the trial court's refusal to give certain proffered jury instructions. ██ First, Guthreau contends the court should have instructed the jury pursuant to CALJIC No. 4.35,[1] citing *People* v. *Mayberry, supra,* 15 Cal.3d 143. The trial court instructed the jury in the language of CALJIC No. 10.23 that "[i]t is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse."

Guthreau's mistake of fact defense was fully covered by specific language embodied in CALJIC No. 10.23. CALJIC No. 4.35 would have been surplusage.

---

[1]"An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful."

■ Guthreau further charges error in the court's refusal to instruct the jury on diminished capacity set forth in CALJIC No. 3.35.[2] He relies improvidently on *People* v. *Mayberry, supra,* 15 Cal.3d 143, in arguing voluntary intoxication is a defense to rape. Guthreau would rewrite the rape law of this state from a general intent to a specific intent crime.

"[R]ape and sodomy are general intent crimes...." (*People* v. *Potter* (1978) 77 Cal.App.3d 45, 51 [143 Cal.Rptr. 379]; cf., *People* v. *Thornton* (1974) 11 Cal.3d 738, 765 [114 Cal.Rptr. 467, 523 P.2d 267], cert. den. 420 U.S. 924 [43 L.Ed.2d 393, 95 S.Ct. 1118].) "Thus, inability by reason of intoxication to form specific intent would not be a defense. If, as a result of self-induced intoxication, appellant believed that the victim was consenting, that belief would not thereby become either 'reasonable' or 'in good faith'...." (*People* v. *Potter, supra,* 77 Cal.App.3d at p. 51; cf., *People* v. *Kelly* (1973) 10 Cal.3d 565, 575 [111 Cal.Rptr. 171, 516 P.2d 875]; *People* v. *Parks* (1971) 4 Cal.3d 955, 960 [95 Cal.Rptr. 193, 485 P.2d 257].) This rule is entirely consistent with the Supreme Court holding in *People* v. *Mayberry, supra,* 15 Cal.3d 143, where the diminished capacity defense by virtue of intoxication arose in the context of a charge of assault with intent to commit rape. The latter charge embraces a specific intent crime not present in the prosecution of forcible rape. (*People* v. *Mayberry, supra,* at p. 151.) There was no error with the trial court's refusal to give the proffered diminished capacity instruction.

■ In a variation on this same theme, Guthreau asserts the jury should have been instructed on voluntary intoxication as relevant to knowledge. (CALJIC No. 4.25.) Knowledge is not relevant to the crimes of forcible rape and oral copulation except to the extent knowledge dovetails with reasonable good faith belief the victim voluntarily consented. We again emphasize the general intent nature of these crimes. (*People* v. *Potter, supra,* 77 Cal.App.3d 45, 51; see *People* v. *Mayberry, supra,* 15 Cal.3d 143.) The trial court did not err in refusing

---

[2]"When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged. [¶] If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent or mental state, you must give defendant the benefit of that doubt and find that he did not have such specific intent or mental state."

the three proffered instructions. The trial court correctly instructed the jury "'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such a condition'" (CALJIC No. 4.20; cf., *People* v. *Kelly, supra,* 10 Cal.3d 565, 575) and charged the jury: "If, as a result of self-induced intoxication, the defendant believed that the female was consenting, that belief would not thereby become either reasonable or in good faith. Unless from all the surrounding circumstances you should find that the defendant's belief that the female was consenting, was reasonable and in good faith." This instruction accurately states the law as declared by the Supreme Court in *People* v. *Mayberry, supra,* 15 Cal.3d 143; see also *People* v. *Potter, supra,* 77 Cal.App.3d 45, 51.

### III

. Guthreau next argues the trial court prejudiced his defense of consent by refusing to allow defense counsel to inquire into details of the prosecutrix's sexual relationship with her boyfriend. He contended this evidence was relevant to prove he had a reasonable good faith belief she would consent to intercourse. ■ "The relevance of past sexual conduct of the alleged victim of the rape with persons other than the defendant to the issue of her consent to a particular act of sexual intercourse with the defendant is slight at best." (*People* v. *Blackburn* (1976) 56 Cal.App.3d 685, 690 [128 Cal.Rptr. 864].) Evidence Code section 1103 has settled the issue of admissibility of such evidence. Section 1103, subdivision (2)(a), provides: "Notwithstanding any other provision of this code to the contrary, and except as provided in this subdivision, in any prosecution under Section 261, or 264.1 of the Penal Code, or for assault with intent to commit, attempt to commit, or conspiracy to commit a crime defined in any such section, *opinion evidence, reputation evidence, and evidence of specific instances of the complaining witness' sexual conduct, or any of such evidence, is not admissible by the defendant in order to prove consent by the complaining witness.*" (Italics added.)

### IV

Finally, Guthreau asserts the People's cross-examination into specific acts of prior misconduct on his part was improper. ■ Evidence Code section 1101, subdivision (a), prohibits the introduction of specific acts when offered to prove conduct on a specified occasion; however,

subdivision (c) states: "Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

Here on cross-examination, Karen Repke, a defense witness and girl friend of Guthreau, was questioned regarding physical confrontations and aggressive behavior between Repke and Guthreau. The announced purpose of these questions was to attack the credibility of Repke, not to show Guthreau had a propensity for aggressive behavior. The trial court had broad discretion to permit the cross-examiner considerable latitude in endeavoring to attack the credibility of a witness. (Evid. Code, § 780; see *People v. James* (1976) 56 Cal.App.3d 876, 886 [128 Cal.Rptr. 733].) Additionally, "relationship" to a party may be a proper subject for inquiry to test the truthfulness of a witness. (*Id.*, at p. 886; *People v. Escobedo* (1967) 250 Cal.App.2d 417 [58 Cal.Rptr. 426].) Here the witness testified "we get along quite well." Although arguably irrelevant to the instant case, the district attorney should be able to test just how "beautiful" the relationship was by way of cross-examination. (Cf., *People v. Barrow* (1976) 60 Cal.App.3d 984, 994 [131 Cal.Rptr. 913].)

If we assume these questions exceeded the bounds of relevant cross-examination, or should have been excluded under Evidence Code section 352, on this factual record of manifest guilt error of such dimension does not warrant reversal. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied March 10, 1980, and respondent's petition for a hearing by the Supreme Court was denied April 30, 1980.