[Civ. No. 63920. Second Dist., Div. One. July 30, 1982.]

DELIA S. et al., Plaintiffs and Respondents, v.
BILLY TORRES, Defendant and Appellant.

NORMA L. TORRES, Plaintiff and Appellant, v.
DELIA S. et al., Defendants and Respondents.

474

---

COUNSEL

Leonard Sacks and Barry L. Friedman for Defendant and Appellant and for Plaintiff and Appellant.

Irachmil B. Taus II and Nathan Misraje for Plaintiffs and Respondents and Defendants and Respondents.

OPINION

**SPENCER, P. J.—**

INTRODUCTION

Defendant, Dr. Billy Torres, appeals from a judgment entered in favor of plaintiffs, Delia S. and George S., after a jury trial. On plaintiffs' complaint, the jury returned a verdict that Billy Torres committed a battery, in the form of a rape, against Delia S.; Billy Torres intentionally inflicted emotional distress on Delia S. and George S.; and George S. suffered a loss of consortium as a result of the acts of Billy Torres. On defendant's cross-complaint, the jury returned a verdict that Delia S. did not slander Billy Torres.

In a related action, consolidated for trial, plaintiff, Norma Torres, appeals from a judgment entered against defendant, Delia S., after the jury returned a verdict that Delia S. committed a battery against Norma Torres, but awarded no damages.

STATEMENT OF FACTS

Delia S. and George S. were married in the Philippines, after which they immigrated to the United States. In 1975, they met Billy Torres and Norma Torres, both dentists, through the Bicolano Association, a Filipino social group; Norma Torres treated the S. children. Thereafter, the Torres and S. families became close friends, seeing each other socially on many occasions.

On February 24, 1977, Billy Torres volunteered to drive George S. to Norton Air Force Base, where George S. planned to fly to the Philippines for a visit. Delia S. and one George Pandez (Pandez) accompanied them. They arrived at Norton Air Force Base at 7 p.m. and departed, leaving George S. behind, approximately one-half hour later; Billy Torres was driving, with Pandez sharing the front seat and Delia S. occupying the rear seat behind the driver. Pandez's destination was closer than the S. residence, so Billy Torres first dropped him off at approximately 9:15 p.m. At this point, Billy Torres asked Delia S. to join him in the front seat, but she declined.

Billy Torres continued on, then parked his automobile between two large buildings. When Delia S. inquired why he was stopping there, she received no response. Instead, Billy Torres turned off the motor, entered

the back seat, and pushed her down. When Delia S. asked what was wrong with him, he took an eight-inch knife from his pocket and placed it at her throat. She attempted to climb out of the automobile, but he pulled her down onto the seat and said, "Give me what I want and then I won't kill you." Billy Torres then began to pull down her underwear; she resisted these efforts, but he accomplished the task with one hand, using the other to hold the knife at her throat. While continuing to hold the knife at her throat, Billy Torres had sexual intercourse with her. After he finished, he warned her not to tell anyone or he would kill her; he then drove her to her home. Delia S.'s daughter admitted her to the house and asked whether she had been crying; she did not answer, but hurried upstairs.

Delia S. told no one of the rape for some time because she was ashamed, humiliated and frightened. In addition, she knew her husband had high blood pressure and feared the effect on him. Hence, when he returned from the Philippines on March 24, 1977, she told him she was pregnant, but kept silent about the rape although she was doubtful that her husband was the father of the expected child.

The evening of George S.'s return, Billy and Norma Torres telephoned him to complain about an anonymous letter they had received; in response, the S.'s went to the Torres' dental office, where Delia S. had a heated exchange with Billy Torres. Subsequently, Billy Torres spoke to George S. privately. When the S.'s returned home, George asked Delia what she wanted to tell him; she was evasive, mentioning her concern that she was being accused of writing the letters and avoiding mention of the rape.

On April 13, 1977, Billy Torres requested a private meeting with George S., at which time he told George that Delia S. needed psychiatric care. When her husband related this to her, she finally told him of the rape.

Some time prior to April 18, George S. accused Billy Torres of the rape and threatened to go to the police; he did not do so at the time because Billy Torres begged him not to. Thereafter, on April 18, Billy Torres requested a meeting, to include other members of the Filipino community, in order to resolve the matter. At the meeting, George S. leveled the accusation of rape and Delia S. recounted the circumstances of the rape. Billy Torres confessed to the rape after which a Mr. Garrovillo stated to George S. that Billy Torres was asking forgiveness and he

should give it. Delia S. then related that she was pregnant as a result of the rape and needed an abortion, for which Billy Torres should pay. He said that he would do so and Norma Torres agreed. However, the Torreses ultimately balked and never paid for the abortion, which was performed on April 23.

Sometime thereafter, the S.'s consulted an attorney and Delia S. reported the rape to the authorities.

## DEFENSE

Billy Torres testified that he began an affair with Delia S. late in 1976. They had sexual intercourse on several occasions, utilizing his automobile. On February 24, 1977, after dropping off Pandez on the way back from Norton Air Force Base, he and Delia S. located a place to park. They remained in the front seat and had sexual intercourse, to which Delia S. consented. When he drove her home, she was not upset or crying.

When George S. accused Billy Torres of rape, Torres requested the meeting to obtain the advice and opinions of his friends. He admitted the intercourse, but not the rape. He agreed to pay for the abortion because he felt some responsibility due to the affair. However, the parties subsequently had a falling out over a refusal to pay Delia S. directly, rather than the hospital.

## CONTENTIONS

### I

Billy Torres contends that the trial court committed prejudicial error in admitting expert testimony concerning the reactions of rape victims and the motives and characteristics of rapists.

### II

Billy Torres asserts that the instructions given the jury with respect to battery and consent were prejudicial in that they erroneously permitted the jury to find an injury in the absence of rape.

### III

Billy Torres avers further that the trial court erred in excluding evidence of Delia S.'s sexual conduct with men other than defendant.

## IV

Billy Torres also contends that the award of compensatory damages for battery and an additional amount for intentional inflictions of emotional distress constitutes an impermissible double recovery.

## V

Billy Torres avers that the trial court's instruction defining the intentional infliction of emotional distress erroneously allowed the jury to award George S. damages for consensual sexual intercourse and for a wrong committed on another.

## VI

Finally, Billy Torres asserts that the trial court erroneously instructed the jury on the issue of loss of consortium.

## VII

Norma Torres contends that the jury's failure to award damages to her constitutes reversible error.

### DISCUSSION

## I

■ We cannot agree with the contention that the trial court committed prejudicial error in admitting expert testimony concerning the reactions of rape victims and the characteristics and motivations of rapists. Expert testimony properly may be offered on a subject which is relevant to an issue tried and beyond common knowledge. (Evid. Code, § 801.) The reactions of rape victims and the varying motivations and personality characteristics of rapists, while perhaps subjects on which we commonly hold opinions, albeit ones that may be grossly erroneous, are *not* subjects within the common knowledge of jurors; hence, where relevant, expert testimony is appropriate.

Although defendant inferentially challenges Barrie Levy's status as an expert, her qualifications are clear. (Evid. Code, § 720.) She is a licensed clinical social worker with a master's degree in social work and

considerable experience in working with rape crisis centers. In addition, Ms. Levy is familiar with detailed studies of rapists and with numerous victim histories.

■ The focus of defendant's challenge begins with the relevance of evidence of rape victims' reactions. He characterizes Ms. Levy's testimony as improperly "validating" and "explaining" the testimony of Delia S. In so doing, he overlooks a central point: The penultimate issue herein was one of witness credibility. The defense was predicated in part on the theory that the actions and responses of Delia S. were "inconsistent" with those of a rape victim; indeed, that is the position maintained on appeal. The defense reliance on the purported inconsistencies indicates the substantial need for expert guidance on the subject, thus rendering Ms. Levy's testimony highly relevant. That testimony indicated that feelings of fear, shame and guilt, resulting in a failure to speak of or report the experience, are very common reactions for rape victims. Rather than "validating" Delia S.'s testimony, this evidence provided a background against which the jury could assess the relevance of the defense theory that her conduct was not that which was typical or expected of a rape victim. Ms. Levy expressed no opinion that Delia S. was in fact psychologically motivated to behave in a certain manner; she simply provided general information, based on her experience, of common rape victim reactions.

■ The more important element of defendant's challenge is his focus on the prejudicial effect of evidence relating to the motivations and personality characteristics of rapists. We recognize the prejudicial potential inherent in such evidence, as did the trial court; however, we conclude that the trial court also perceived correctly the considerable relevance of the evidence in the instant matter. The defense placed great emphasis on Billy Torres' status: (1) As a close friend of the S. family; (2) as a professional man; and (3) as a community leader. The obvious purpose of this emphasis on status was to suggest to the jury the inference that a man of such prestige and standing might succumb to an adulterous temptation, but would not commit a rape. Hence, any evidence which tended to demonstrate that prestige or community standing did not remove an individual from the motivation and profile of a rapist was of great importance to plaintiff's case.

Ms. Levy testified that there are generally two classes of rapists. A power rapist is motivated by feelings of inadequacy and a need to prove

his virility by assuming power over the victim; therefore, he is interested in forcing the sex act rather than harming the victim. An automobile is a habitual setting for a "power rape." Moreover, such rapists come from all walks of life and professions. Ms. Levy expressed no opinion as to whether Billy Torres' conduct or personality fit the profile of a power rapist. Therefore, contrary to defendant's suggestion, her testimony did not attack his character, but rather provided an appropriate means by which the jury could determine the probative weight to be given to his status. It was vital that the jury have as realistic a view as possible of the manner in which rape victims react to the experience and the motives for rape, to the end that the jury not decide the credibility issue on the basis of extraneous factors or personal misconceptions.

Evidence Code section 352 gives a trial court discretion to weigh the probative value of evidence against its prejudicial effect. (*Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 339 [145 Cal.Rptr. 47].) The expert testimony at issue was not speculative or conjectural; moreover, given the particular bases underlying the issue of witness credibility in the instant matter, the evidence provided relevant guidance on subjects beyond the common knowledge of the jurors and is hence distinguishable from that at issue in *People* v. *Clark* (1980) 109 Cal.App.3d 88 [167 Cal.Rptr. 51] and *People* v. *Guthreau* (1980) 102 Cal.App.3d 436 [162 Cal.Rptr. 376]. It is clear that the trial court carefully weighed possible prejudice against probative value; in the instant circumstances, we perceive no abuse of discretion in the result obtained.

## II

The assertion that the instructions given to the jury with respect to battery and consent were prejudicial in that they erroneously permitted the jury to find an injury in the absence of rape is specious. The jury was instructed that a battery is "any intentional, unlawful and harmful or offensive contact by one person with the person of another" (BAJI No. 6.71) and that "a person may (expressly or) by voluntarily participating in an activity . . ., consent to an act which otherwise would be a battery." (BAJI No. 6.72.) ■ Rape, as such, is a criminal offense (Pen. Code, § 261); but an act which meets the criminal definition of rape constitutes a civil wrong because it is an illegal and highly offensive touching—i.e., a battery. (Cf. *Lind* v. *Closs* (1891) 88 Cal. 6 [25 P. 972].) In addition, it is established that one may consent to an act, otherwise a battery, thereby vitiating the wrong. (See, e.g., *Sayadoff* v.

*Warda* (1954) 125 Cal.App.2d 626, 631 [271 P.2d 140].) Accordingly, the instructions given correctly stated the law.

Defendant asserts, however, that the proffered instructions are too general in the factual context of the instant case; it is argued that the instructions permitted the jury to view consensual intercourse as a battery in that the consent instruction encouraged the belief that the jury had discretion to decide whether consent should, in this instance, vitiate the wrong. We need not explore the logical labyrinth of defendant's position, for the issue is not properly before us. ■ Notwithstanding the rule that a party is deemed to have excepted to every instruction given (Code Civ. Proc., § 647), a party waives his right to complain on appeal that an instruction correct in law is too general or incomplete unless he has requested a clarifying instruction. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 948-949 [160 Cal.Rptr. 141, 603 P.2d 58].) Defendant did not request instructions more fully defining the battery at issue herein or the effect of consent. As noted, *ante*, the instructions given correctly state the law; hence, defendant has waived the issue on appeal.

### III

■ There is no merit to the averment that the trial court erred in excluding evidence of Delia S.'s sexual conduct with men other than defendant. In general, such evidence is now inadmissible in criminal proceedings, where far more is at stake than in the instant matter. The rationale underlying the exclusion of such evidence on the issue of consent in criminal proceedings is equally applicable to civil litigation; i.e., the purported victim's past sexual conduct with men other than the defendant has slight relevance, at best, to the issue of consent. (*People v. Guthreau, supra*, 102 Cal.App.3d 436, 444; *People v. Blackburn* (1976) 56 Cal.App.3d 685, 690 [128 Cal.Rptr. 864].) The former rule of admissibility was based on the archaic and discredited view that a woman, once unchaste, will be a ready and willing participant in any proposed future sexual adventure. (*Ibid.*)

Defendant notes correctly that evidence of the purported victim's past sexual conduct with men other than the defendant nonetheless may be admissible to impeach credibility. However, whether the proffered evidence is admissible to impeach credibility depends on a preliminary ruling from the trial court that the evidence would support a finding that the witness' credibility is affected thereby. (*Granville v. Parsons* (1968) 259 Cal.App.2d 298, 304 [66 Cal.Rptr. 149]; see also *LeGrand*

v. *Yellow Cab Co.* (1970) 8 Cal.App.3d 125, 133 [87 Cal.Rptr. 292].) Defendant never offered the evidence to impeach credibility and never sought the necessary preliminary fact determination. Therefore, the trial court's exclusion was proper on the ground asserted and must be upheld on appeal. (*City and County of San Francisco v. Western Air Lines, Inc.* (1962) 204 Cal.App.2d 105, 148 [22 Cal.Rptr. 216].)

## IV

■ Billy Torres also contends that the trial court erred in permitting the jury to award compensatory damages for battery to Delia S. as well as an additional amount for the intentional infliction of emotional distress. He argues that this constitutes an impermissible double recovery in that the jury was instructed that compensable damages for battery included "any pain, discomfort, fears, anxiety and other mental and emotional distress" (BAJI No. 14.13) and further that damages for the infliction of emotional distress include "any pain, discomfort, fears, anxiety and other emotional distress" (BAJI No. 12.88). We disagree.

We note at the outset that defendant does not claim the instructions given are incorrect statements of the law regarding the respective measures of damage, nor could he do so successfully. Therefore, it was incumbent upon him to request a qualifying instruction if he deemed these instructions too general or incomplete in their explanation. By his failure to do so, he has waived any claim of error or prejudice on appeal. (*Agarwal v. Johnson, supra*, 25 Cal.3d 932, 948-949.)

We note further that an impermissible double recovery was not an inevitability under the facts at hand. Defendant mistakenly assumes that the outrageous and extreme intentional invasion of plaintiff's emotional tranquility which justifies recovery for the infliction of emotional distress (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498 [86 Cal.Rptr. 88, 468 P.2d 216]) is the battery, or act of rape, itself. However, there is other evidence in the record from which reasonable men might shrink in outrage, and that is entirely a question for the jury. (*Id.*, at p. 499.) The jury reasonably could have found the abuse and manipulation of a position of friendship, trust and influence in order to place the wife of a friend in a sufficiently vulnerable position to accomplish her rape was so extreme and outrageous as to cause severe emotional distress beyond that resulting from the rape itself. In addition, the jury reasonably could have found defendant's conduct following the rape, accusing Delia S. of slander and libel and advising

her husband that she needed psychiatric care, was sufficiently outrageous to cause additional humiliation and emotional distress. Given the existence of independent bases justifying a damage award for the infliction of emotional distress in addition to any damages awarded for battery, we decline to presume error.

V

We find no merit in the averment that the trial court erroneously permitted George S. to recover for the intentional infliction of emotional distress on a theory of consensual sexual intercourse or for a wrong against another. The jury was instructed that the intentional infliction of emotional distress requires "extreme and outrageous unprivileged conduct of another done either with the specific intent to cause emotional distress or with a reckless disregard of the probability of causing such distress" (BAJI No. 12.70) and that plaintiffs bore the burden of proving Billy Torres intentionally inflicted emotional distress on George S.

Defendant argues first that the above instruction erroneously permits a recovery for consensual sexual intercourse. The instruction correctly states the law on the issue addressed therein and defendant did not request a clarifying instruction. Accordingly, under *Agarwal v. Johnson, supra,* 25 Cal.3d 932, 948-949, the issue is waived on appeal.[1]

Defendant argues further that George S. was erroneously permitted to recover for a wrong against another in that he neither was a direct victim of the act nor suffered shock as a result of sensory and contemporous observance of the act. (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [167 Cal.Rptr. 831, 616 P.2d 813]; *Dillon v. Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Neither *Molien* nor *Dillon* is applicable to the instant proceeding; each involves the negligent infliction of emotional distress. In contrast, what is at issue here is the *intent* to inflict such distress—an intent, either specific or implied from conduct evincing a reckless disregard for the consequences, directed against George S.

---

[1]Throughout, defendant places considerable emphasis on what he terms the inconsistency of the jury verdicts as evidence of jury confusion on these issues. We are constrained to note that the verdicts herein are not inconsistent; the same nine jurors who found a battery in the form of rape found in favor of plaintiffs on all other causes of action. At worst, some of the remaining three jurors evinced confusion as to whether they should abide by their original finding that no battery occurred or vote thereafter as if they concurred with the majority on the basic issue.

This state has recognized a cause of action for the intentional infliction of emotional distress where an unauthorized autopsy was performed on the plaintiff's deceased husband. In *Huntly* v. *Zurich Gen. A. & L. Ins. Co.* (1929) 100 Cal.App. 201 [280 P. 163], the court noted that "plaintiff's cause of action arose solely from her relationship to deceased and the effect the mutilation [of the body] had upon her, personally." (*Id.*, at p. 212; see also Rest.2d Torts, § 868, com. (a); cf. *Sinai Temple* v. *Kaplan* (1976) 54 Cal.App.3d 1103, 1112 [127 Cal.Rptr. 80].) One may reasonably infer that the violation and rape of one's wife, particularly by a friend, would have similarly profound and extreme emotional consequences. Thus, the wrong for which recovery was sought was personal to George S. As in *Huntly*, it is his relationship to the object of the act and the effect of the transgression on him personally which gives rise to the cause of action.

## VI

■ There is no greater merit to the assertion that the instruction on loss of consortium erroneously and prejudicially permitted recovery on a finding of consensual sexual intercourse. We do perceive error in the instruction, which advised the jury: "If you find that plaintiff George [S.] is entitled to a verdict against the defendant and as a proximate result . . . has suffered" a loss of consortium, "you shall award him reasonable compensation" (BAJI No. 14.40); the initial reference to George S. should have been to Delia S., inasmuch as one's action for loss of consortium stems from an injury to one's spouse. (*United Services Automobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957, 964 [135 Cal.Rptr. 34].) However, it is not reasonably probable that the jury was confused or misled; plaintiffs' counsel at all times directly linked the loss of consortium cause of action to the inability of Delia S. to perform her marital responsibilities as a result of the battery/rape. All of the evidence adduced on the issue related to the loss of comfort, affection, conjugal relations, etc. which George S. suffered *as a direct result of* Delia S.'s injury from the rape. Moreover, inasmuch as the same nine jurors who initially found the battery/rape also found that George S. suffered a loss of consortium, defendant has suffered no conceivable prejudice from the literal wording of the instruction.

## VII

■ Norma Torres contends that the failure of the jury to award damages after returning a verdict in her favor on the battery cause of action constituted reversible error. We disagree.

An award of no damages does not necessarily represent error. The evidence presented as to injury and damages disclosed only that Delia S. scratched Norma Torres' face, after which Norma Torres sought emergency medical treatment; the treatment consisted of the application of ointment to the scratch and a prescription for Valium upon Norma Torres' representation that she was nervous and upset. This testimony was entirely uncorroborated; no medical testimony was given and no medical bills were received in evidence. From the evidence presented, the jury reasonably could have concluded that Norma Torres suffered nothing more than a trivial and insubstantial injury which did not justify the medical expenditures or that she suffered no damage at all. In that credibility is an issue for the jury, the uncorroborated testimony of a witness may be disregarded. (*Bisnett* v. *Hollis* (1962) 207 Cal.App.2d 142, 150 [24 Cal.Rptr. 231].) Therefore, a jury's factual determination of injury or damage will not be set aside if, as in the instant circumstance, it is reasonably justified by the state of the evidence. (See *Randles* v. *Lowry* (1970) 4 Cal.App.3d 68, 74 [84 Cal.Rptr. 321].) If the jury found trivial or insubstantial injury, an award of nominal damages would have been justified (see *Avina* v. *Spurlock* (1972) 28 Cal.App.3d 1086, 1089 [105 Cal.Rptr. 198]), but a failure to award nominal damages generally provides no ground for reversal. (*DuZeff's Hollywood, Inc.* v. *Wald* (1965) 235 Cal.App.2d 678, 681 [45 Cal.Rptr. 584].) Accordingly, we find no reversible error.

The judgments are affirmed.

Lillie, J., and Hanson (Thaxton), J., concurred.