[No. A072329. First Dist., Div. Two. July 22, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
CORY J. CHANDLER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV, V, VI, VII and VIII.

COUNSEL

Janice M. Lagerlof, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Susan E. Myster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUVOLO, J.—**

### I. Introduction

Appellant Cory J. Chandler was convicted by jury of numerous sex offenses,[1] false imprisonment, and two counts of furnishing cocaine base (Health & Saf. Code, § 11352, subd. (a)). He was sentenced to a term of 185 years to life as a "third strike" defendant under California's "Three Strikes" law (Pen. Code, § 667, subds. (b)-(i)). Appellant alleges error occurred at virtually every stage of the proceeding. With regard to pretrial matters, he claims the court erred in allowing the prosecutor to amend the information to add additional charges. He claims error in a number of the court's evidentiary rulings, the most important of which challenges the court's limitation of evidence concerning the victim's previous exchanges of sex for drugs. In addition, he claims the evidence is insufficient to support his convictions for furnishing cocaine base. Finally, he raises instructional error and multiple issues concerning sentencing under the Three Strikes law.

We affirm the convictions and judgment in all respects. In the published portion of this opinion, we conclude that the trial court correctly applied the appropriate statutory procedures provided for in Evidence Code section 1103, subdivision (c), to determine the limited admissibility of prior sexual conduct of a victim of sexual assault. However, it was error, although harmless in this instance, to consider the trustworthiness of the proffered evidence as a criterion in ruling upon its admissibility.

---

[1] Appellant was found guilty of two counts of forcible oral copulation (Pen. Code, § 288a, subd. (c)); two counts of forcible penetration by a foreign object (Pen. Code, § 289, subd. (a)); and one count of forcible sodomy (Pen. Code § 286, subd. (c)). The jury failed to reach a verdict on the counts alleging forcible rape (Pen. Code, § 261, subd. (a)(2)) and false imprisonment (Pen. Code, § 236).

## II. Statement of Facts

The facts underlying appellant's convictions were adduced predominantly through the testimony of the victim. By her own admission, at the time of these crimes, she was a five-month-pregnant mother of two who had been addicted to crack cocaine for many years.

The victim testified she first met appellant on April 23, 1994, when he arrived at her apartment at Geneva Towers, a housing project in San Francisco, and indicated he knew her stepbrother. On that occasion, appellant supplied her with crack cocaine, which they smoked together. The victim made a date to see appellant again but later had to cancel it.

Around midnight on April 29, 1994, appellant appeared at the victim's door unannounced and unexpected. The victim's two sons were asleep in their bedroom, and because she perceived no threat from appellant, she let him in. Appellant declared he wanted "a hit" of cocaine, to which the victim replied, "me[,] too." The victim testified after they smoked crack cocaine together, appellant took off his clothing and demanded the victim also take off her clothing. When she refused, he hit her on her cheek, after which she insisted they go into her bedroom so her children would not be awakened. She then submitted to numerous sexual acts over the course of 45 uninterrupted minutes, including sodomy and oral copulation.

The victim heard her 11-year-old son get up to use the bathroom, and she told appellant she was going to check on him. She left the bedroom and told her son to get the police. After she returned to the bedroom, appellant told her to get him his clothes. She gave him his clothes and then fled the apartment. As she was pounding on a neighbor's door, appellant left her apartment, saying as he left, "you know you're tripping."

The defense argued the sexual encounter which formed the basis of appellant's prosecution was entirely consensual, because the victim was exchanging sexual acts for crack cocaine on the night in question. In so arguing, the defense highlighted the victim's admission that she had traded sex for drugs on two prior occasions. The defense also relied on expert testimony regarding the effects of long-term cocaine addiction to argue the victim's characterization of the events that night might well be the result of "memory gaps, confabulation, paranoia, [and] psychotic responses . . . ."

The victim denied, however, that the sexual acts performed with appellant were voluntary. The victim's testimony was corroborated by the testimony of one of the responding police officers, who noticed the victim's cheek was

red and swollen. The officer also described the victim as crying, shaking, and nauseous during her reporting of the incident. The victim was examined at a rape treatment center shortly after the assault. The sexual assault examiner who conducted the examination testified that her observations and physical findings were consistent with forcible sexual conduct, specifically vaginal and anal rape.

## III. EXCLUSION OF EVIDENCE OF VICTIM'S PRIOR SEXUAL CONDUCT

Appellant first assigns error to the trial court's exclusion of specific instances of the victim's past sexual behavior. Statutes enacted in 1974[2] specify when and under what circumstances evidence of a victim's prior sexual behavior can be admitted in a trial of sexual assault charges. The statutory scheme actually consists of two statutes, Evidence Code sections 1103, subdivision (c), and 782. Section 1103, subdivision (c), provides that a defendant cannot introduce opinion evidence, reputation evidence, and evidence of specific instances of the alleged victim's previous sexual conduct with persons other than the defendant to prove the victim consented to the sexual acts alleged.[3] In adopting this section the Legislature recognized that evidence of the alleged victim's consensual sexual activities with others has little relevance to whether consent was given in a particular instance. (See *People* v. *Blackburn* (1976) 56 Cal.App.3d 685, 690 [128 Cal.Rptr. 864].)

While strictly precluding admission of the victim's past sexual conduct for purposes of proving consent, Evidence Code section 1103, subdivision (c)(4), allows the admission of evidence of prior sexual history relevant to the credibility of the victim. Because the victim's credibility is almost always at issue in sexual assault cases, Evidence Code section 782[4] specifies a procedure requiring an in camera review of the proffered evidence to

---

[2] Robbins Rape Evidence Law, Statutes 1974, chapter 569, section 3, pages 1388-1389.

[3] Section 1103, subdivision (c) of the Evidence Code provides in relevant part: "(1) [O]pinion evidence, reputation evidence, and evidence of specific instances of the complaining witness' sexual conduct, or any of that evidence, is not admissible by the defendant in order to prove consent by the complaining witness. [¶] (2) Paragraph (1) shall not be applicable to evidence of the complaining witness' sexual conduct with the defendant. [¶] (3) If the prosecutor introduces evidence, . . . or the complaining witness as a witness gives testimony, and that evidence or testimony relates to the complaining witness' sexual conduct, the defendant may cross-examine the witness who gives the testimony and offer relevant evidence limited specifically to the rebuttal of the evidence introduced by the prosecutor or given by the complaining witness. [¶] (4) Nothing in this subdivision shall be construed to make inadmissible any evidence offered to attack the credibility of the complaining witness as provided in Section 782."

[4] Evidence Code section 782 states in pertinent part: "(a) In any prosecution under Section 261, 264.1, 286, 288, 288a, 288.5 or 289 of the Penal Code, or for assault with intent to commit, attempt to commit, or conspiracy to commit any crime defined in any of those

diminish the potential abuse of section 1103, subdivision (c)(4). The defense may offer evidence of the victim's sexual conduct to attack the victim's credibility if the trial judge concludes following the hearing that the prejudicial and other effects enumerated in Evidence Code section 352 are substantially outweighed by the probative value of the impeaching evidence.

By narrowly exercising the discretion conferred upon the trial court in this screening process, California courts have not allowed the credibility exception in the rape shield statutes to result in an undermining of the legislative intent to limit public exposure of the victim's prior sexual history. (See, e.g., *People* v. *Blackburn, supra,* 56 Cal.App.3d at pp. 692-693; *In re Wright* (1978) 78 Cal.App.3d 788, 805-806 [144 Cal.Rptr. 535]; *People* v. *Guthreau* (1980) 102 Cal.App.3d 436, 444 [162 Cal.Rptr. 376].) Thus, the credibility exception has been utilized sparingly, most often in cases where the victim's prior sexual history is one of prostitution. (See, e.g., *People* v. *Varona* (1983) 143 Cal.App.3d 566, 569-570 [192 Cal.Rptr. 44] [evidence of the victim's prior prostitution activities in the location where she claimed to have been raped should have been admitted]; *People* v. *Randle* (1982) 130 Cal.App.3d 286, 293-294 [181 Cal.Rptr. 745] [granting defendant a new trial after evidence of victim's habit of soliciting public sex acts in exchange for money and drugs was discovered].) ▮ Evidence the victim participated in a form of prostitution is conduct involving moral turpitude which is admissible for impeachment purposes. (See *People* v. *Wheeler* (1992) 4 Cal.4th 284, 297, fn. 7 [14 Cal.Rptr.2d 418, 841 P.2d 938] [allowing the admission of past criminal conduct involving moral turpitude amounting to a misdemeanor absent a conviction to impeach the credibility of witnesses and

sections, except where the crime is alleged to have occurred in a local detention facility, as defined in Section 6031.4, or in a state prison, as defined in Section 4504, if evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness under Section 780, the following procedure shall be followed: [¶] (1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness. [¶] (2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated. [¶] (3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at such hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant. [¶] (4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352 of this code, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court. [¶] (b) As used in this section, 'complaining witness' means the alleged victim of the crime charged, the prosecution of which is subject to this section."

Proposition 8 expressly exempts Evidence Code section 782 from the operation of the "Right to Truth-in-Evidence" provision. (See Cal. Const., art. I, § 28, subd. (d).)

parties].) Prostitution is a crime of moral turpitude. (*People* v. *Alvarez* (1996) 14 Cal.4th 155 [58 Cal.Rptr.2d 385, 926 P.2d 365]; see also *People* v. *Hayes* (1992) 3 Cal.App.4th 1238 [5 Cal.Rptr.2d 105].)

Utilizing the appropriate hearing procedure set forth in Evidence Code section 1103, subdivision (c), appellant made a general offer of proof identifying five individuals who could testify the victim was a "toss up," or someone who "regularly and frequently provides sex to men in exchange for crack cocaine." Acknowledging the evidence could not be used as evidence the victim consented to the sexual acts alleged, appellant contended the witnesses were only offered on the issue of credibility.[5]

At the hearing, the court first heard the proffered testimony of Tommy Bruce Isaac. Isaac testified he had a relationship with the victim for about 19 months during which they were "having sex all the time." During that time, he exchanged drugs or money for sex with the victim. However, he admitted he never saw her having sex with anyone else.

Vannessa Joseph testified she lived in Geneva Towers, where the victim resided, but she only knew the victim slightly. Joseph had heard the victim "be tossing up, doing things for drugs," explaining the victim was known to trade sexual favors for drugs. Joseph admitted she did not have any personal knowledge of the victim's lifestyle, explaining she was relying on "just rumors."

Dwayne Davis, who was imprisoned on a burglary conviction, testified he had known the victim for about two years because he lived in Geneva Towers before going to jail. Davis testified he had exchanged crack cocaine for sex with the victim "maybe around three times" within the previous two years. Davis said the victim had a reputation as a "toss up" in the Sunnydale community.

In the same vein, Reni Washington, who was imprisoned on a robbery conviction, testified he knew the victim because he lived in Geneva Towers before going to prison. Washington said he met the victim when he sold crack cocaine to her and gradually they developed a pattern of trading crack cocaine for sex. Washington said the victim was known as a "toss up," explaining the term as "an individual who exchange [*sic*] sex for drugs." Washington said he had never known the victim to deny sex after receiving drugs.

---

[5]Appellant concedes it would be impermissible to admit the evidence of prior incidents where the victim provided sex for drugs as circumstantial evidence tending to prove that was what she was doing on the evening in question with appellant. We note appellant did not testify at trial, and therefore he makes no argument the evidence was admissible on the issue of intent.

San Francisco Police Inspector Philip Dito was also called by the defense at the hearing. He testified that during an interview with the victim, she admitted exchanging sex for drugs on a few occasions.

Before announcing its ruling, the court indicated it had reviewed the in camera testimony "in the light of 1103 of the Evidence Code" and "[i]n doing so, we weigh what is probative, what is prejudicial, what is time consuming and endeavor to try to present the case appropriately." The court first ruled Isaac would be prevented from testifying because he had indicated that during the time the victim exchanged sex for drugs they "were in a relationship during that period, relationship of some length." The court next ruled Joseph's testimony with regard to the victim's reputation as a toss up was "so vague" that it was "not appropriate for introduction in the case." With regard to the two remaining witnesses subpoenaed from state prison, Washington and Davis, the court indicated it had "weighed their testimony and finds each to be an unbelievable witness, not worthy of being placed before the court and before the jury . . . ."

It is important to note, pursuant to the remaining portion of the trial court's evidentiary ruling, the defense at trial *was* allowed to question the victim about two prior incidents in which she admitted exchanging sex for crack cocaine.[6] The court's ruling also gave the defense the opportunity to question Inspector Dito about the report he took in which the victim admitted exchanging sex for drugs on two occasions.

■■■ On appeal, appellant criticizes the court's restriction of this evidence, claiming the court "improperly applied the rape shield law by ruling that the defense could only question [the victim] about two prior incidents in which she exchanged sex for drugs and by precluding the defense from presenting four witnesses who in themselves could have established that [the victim's] version of her activities was inaccurate." Appellant contends the exclusion of this evidence prevented him from having a full and fair opportunity to cross-examine the victim and gave her a false aura of credibility in the eyes of the jury.

---

[6]The prosecution was allowed to question the victim outside the presence of the jury about the offer of proof made by the defense. The victim testified that Isaac, Davis, and Washington all lied if they said she traded sex for drugs with them. However, she admitted she had exchanged sex for crack before April 29, 1994, the date of the incident in question. She had done so "maybe once or twice" but was unclear about the dates. Later, she estimated she had exchanged, "occasionally, few times in the building," before April 1994, but *no more than* five times. In answering these questions, she distinguished "an exchange" from simply "using drug[s] with the person and having sex also." She could not give an exact number of sex/drug exchanges, stating "it's less than a hundred times. I can't—I don't remember how many times, but it was not—once or twice. I'll put it that way." She then specified it had occurred no more than two times before the incident and five or six times afterward.

■ A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion. (*People* v. *Varona, supra*, 143 Cal.App.3d at p. 569.) ■ The trial court did not abuse its discretion in finding the victim's prior sexual conduct with Isaac would have dubious relevance to her credibility. Isaac admitted the victim's willingness to exchange sex for drugs had taken place during a long-term sexual relationship which would have little or no bearing on the victim's willingness to exchange sex for drugs on a routine basis. Furthermore, given the questionable foundation for Joseph's opinion evidence relating the victim's general reputation at Geneva Towers, we are satisfied the court acted within its discretion in concluding the balance between probative value and prejudicial effect weighed in favor of excluding her testimony.

However, the court excluded the testimony of Davis and Washington based on the sole criterion that they were unbelievable. The rape shield statutes do not permit the trial judge to make a credibility determination at the in camera hearing. Instead, the trial judge must evaluate the proffered evidence under the admissibility guidelines set forth in Evidence Code section 352, i.e., weighing of prejudicial effect versus probative value and additional evidentiary criteria. Credibility of the proffered witness is not included under these guidelines. (*Vorse* v. *Sarasy* (1997) 53 Cal.App.4th 998, 1012-1013 [62 Cal.Rptr.2d 164] [assessment of witness credibility is not a component of the Evidence Code section 352 balancing test]; see also *People* v. *Cudjo* (1993) 6 Cal.4th 585, 610 [25 Cal.Rptr.2d 390, 863 P.2d 635].) Therefore, we conclude it was error for the court to exclude Davis and Washington as witnesses on the sole criterion delineated, and we accept appellant's proffer of this testimony as stated. Consequently, we review whether the exclusion of this evidence requires appellant's convictions be overturned.

We conclude that any evidentiary error was harmless because, viewing the entire record, it is not reasonably probable the error affected the verdict. (*People* v. *Zataray* (1985) 173 Cal.App.3d 390, 401 [219 Cal.Rptr. 33].) First, to the extent the victim's credibility might be affected by evidence she had engaged in an exchange of sex for drugs previously, that evidence was already before the jury from the victim's own admission at trial. Appellant argues the proffered testimony of Davis and Washington was additionally relevant to the victim's credibility because they disputed the number of times she admitted to having engaged in sex for drugs. Impeachment based upon such a showing would have little probative value. It is not the discrepancy in the victim's testimony concerning the *number of times* which is of impeachable importance, but the fact the victim engaged in this form of

conduct involving moral turpitude which arguably places her veracity in dispute. Moreover, the victim's version of events was supported by evidence recovered from the room where the sexual assault occurred, the records taken at the hospital which showed evidence of trauma to her vagina and rectum consistent with sexual assault, the reporting officer's observation that the victim's cheek was red and swollen, and her son's testimony about her highly emotional state when she asked him to get help. Appellant makes no attempt at explaining away the physical evidence of assaultive conduct, making his story of consensual sex patently unconvincing. (*People* v. *Tassell* (1984) 36 Cal.3d 77, 89 [201 Cal.Rptr. 567, 679 P.2d 1] overruled on other grounds *People* v. *Ewoldt* (1994) 7 Cal.4th 380, 398-401 [27 Cal.Rptr.2d 646, 867 P.2d 757].) In sum, we find no reasonable probability of a more favorable result had the jury heard the testimony of Davis and Washington.

## IV.-VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## IX. Disposition

The judgment is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1997. Mosk, J., was of the opinion that the petition should be granted.

*See footnote, *ante,* page 703.