Filed 1/8/15  P. v. DeLaTorre CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALBERT DELATORRE,<br><br>Defendant and Appellant. | F065566<br><br>(Super. Ct. No. BF137436A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Cory J. Woodward, Judge.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Following a jury trial, defendant Albert DeLaTorre was convicted of attempted oral copulation by force or violence on N.M. (count 1) (Pen. Code, § 664 & former § 288a, subd. (c)(2))[1][2] and convicted of a lewd and lascivious act upon N.M., who was 15 at the time and at least 10 years younger than defendant (count 2) (§ 288, subd. (c)). Prior to the jury being sworn, defendant admitted he had suffered a prior strike conviction (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)). Defendant filed a motion to strike the prior strike conviction (§ 1385), which the court denied. Defendant was sentenced on count 1 to eight years and on count 2 to one year four months for a total term of nine years four months.

During the trial, N.M. testified a family meeting occurred around Christmas in 2010. Present at the meeting were N.M., defendant, N.M.'s mother (Lynn), N.M.'s stepbrother (Joshua) and his girlfriend. N.M. testified she informed these individuals about defendant's molestation of her.

The following day after N.M. gave this testimony, defense counsel sought leave from the trial court to cross-examine her regarding the true topic of the family meeting, i.e., that N.M. was having a sexual relationship with her stepbrother. The trial court denied defendant's request finding such evidence more prejudicial than probative. In the alternative, defense counsel asked to elicit testimony from three witnesses impeaching

---

[1]     Regarding count 1, the abstract of judgment shows conviction under Penal Code sections "664/288A(C)," which tracked the allegation as set forth in the information. Both the abstract of judgment and information appear to contain a scrivener's error. The jury instruction given on count 1 tracked the statutory language of former Penal Code section 288a, subdivision (c)(2). (Pen. Code, § 288a, subd. (c)(2), was renumbered as § 288a, subd. (c)(2)(A), effective September 9, 2010, without substantive change.) As discussed in section II of the Discussion, *post*, we order the trial court to correct the abstract of judgment on our own motion. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.)

[2]     All statutory references are to the Penal Code unless otherwise noted.

N.M.'s testimony regarding the true topic of the family meeting. The trial court denied that request and defense counsel never filed a motion under Evidence Code section 782.

On appeal, defendant contends the trial court denied him due process and the right to confront N.M. when it prevented the defense from cross-examining her or calling its own witnesses regarding the actual topic discussed at the family meeting. Defendant argues the trial court prejudicially erred, requiring reversal. We find defendant's argument unpersuasive and affirm.

**FACTS AND PROCEDURAL HISTORY**

Defendant does not challenge the sufficiency of the evidence supporting the jury's convictions in counts 1 and 2. As such, set forth below are those facts relevant to defendant's contention on appeal and an understanding of the case.

## I.     The Motion in Limine.

Prior to trial, the prosecution filed an in limine motion to exclude evidence of N.M.'s prior sexual conduct to prove or disprove the truthfulness of her testimony pursuant to Evidence Code section 352 as it would be "highly prejudicial and not relevant." The prosecutor further asked that, if defendant intended to present any evidence regarding N.M.'s prior sexual conduct, defendant comply with Evidence Code section 782.

At the hearing, the trial court indicated the parties had discussed this issue in chambers. Defendant's trial counsel indicated he was aware of some evidence but did not intend to present it. The trial court granted the in limine motion because "that type of evidence is not being presented."

## II.     Prosecution Evidence.

The parties stipulated defendant was born in 1965.

### A.     N.M.'s testimony.

N.M. first met defendant when she was 15 years old. She began living with her mother and defendant in January of 2008. Defendant touched her inappropriately starting

when she was 15 years old and continuing until she was 18. N.M. would wake up with a wet earlobe and defendant would be licking, or her face would be wet and defendant would be walking out of her room. At other times defendant touched her buttocks and vagina over her clothes. Defendant exposed his penis to show her his "jail pearl beads" he had obtained in prison.[3] On a different occasion he showed her pictures of his erect penis on his cellular telephone.

When she was 18 years old, defendant pulled her down on top of him, kissed her, put his tongue in her mouth, pulled down her dress and licked her breasts. He tried to lift up her dress and said, "let me go down there" and she kept saying "no." N.M.'s mother came home and defendant stopped. N.M. believed defendant wanted to perform oral sex on her because he "kept scooting down" on her and trying to lift up her dress.

N.M. estimated defendant touched her inappropriately more than 50 times while she lived with him. She did not tell her mother about any of defendant's actions. She eventually told defendant's son Joshua what was happening.

N.M. testified a family meeting occurred about three days before Christmas in 2010 at which N.M., defendant, Lynn, Joshua, and his girlfriend attended. N.M. informed everyone about defendant's actions. Defendant said he would get counseling. For approximately one week after the meeting, Lynn stood by the bathroom door when N.M. showered.

N.M.'s sister, Monica, lived in New Orleans at that time and visited for a week starting on Christmas Day. N.M. testified she told Monica about defendant's actions during that visit. The next January, N.M. visited Monica for almost a month in New Orleans. N.M. testified Monica did not want her to return home, but N.M. decided to

---

[3] N.M. testified defendant explained to her he punctured the skin of his penis with a sharpened toothbrush and pushed pearls inside the hole for greater pleasure during intercourse.

4.

return to Bakersfield because her friends and "stuff" were there, she thought her mother "would have taken care of it[,]" and she put faith in defendant that he was going to get counseling "like we all talked about." Upon returning, N.M. realized nothing had changed.

In March of 2011 she moved in with her older sister Shannon and Shannon's husband, Adam. N.M. told them what happened with defendant. N.M. also told her biological father about defendant's actions shortly after she moved in with Shannon and Adam. No one contacted law enforcement.

At some point, Adam's mother contacted law enforcement. On March 9, 2011, detective Jamie Montellano made contact with N.M., who said nothing had happened between her and defendant. On April 18, 2011, N.M. contacted Montellano and gave a statement indicating defendant molested her. N.M. did not initially want to talk to Montellano but she decided to speak with law enforcement after she tried to tell her mother about defendant's actions, and her mother refused to believe her.

Montellano arranged for N.M. to make a pretext telephone call to defendant, which occurred and was recorded.[4] During the pretext call, defendant acknowledged he had touched N.M.'s vagina and breasts, licked her nipples, grabbed her buttocks and groped her. N.M. said she was 15 when this happened and defendant agreed. Defendant told N.M. he had problems, was molested himself, and promised to get counseling. Defendant said she was "an attractive little girl" and an "attractive woman" and he had stolen her innocence and betrayed her trust.

On cross-examination, N.M. testified she did not say anything to Monica about defendant's actions because she had seen defendant touch Monica before. N.M. felt she did not have to say anything to Monica because Monica "already knew." N.M. also

---

**4**     The audio recording of the pretext phone call was played for the jury.

5.

testified she had been led to believe defendant never touched K.I.,[5] the victim from defendant's previous conviction.

### B. K.I.'s testimony.

K.I. began living with defendant, who was her mother's boyfriend, when she was in third grade. Starting then, and lasting for six years, defendant touched her inappropriately; including caressing her breasts, buttocks and genitals over her clothing, oral copulation of her vagina, and digital penetration of her vagina.

## III. Defense Counsel Revisits the Prosecutor's in limine Motion.

The day after N.M. testified about the family meeting, defendant's trial counsel asked to revisit the prosecutor's in limine motion excluding evidence of N.M.'s prior sexual conduct under Evidence Code section 782. Defense counsel reminded the court he had advised both the court and prosecutor he was aware N.M. was having a sexual relationship with Joshua when these events occurred. Defense counsel stated N.M.'s relationship with Joshua was now relevant because N.M. testified a family meeting occurred in which the topic was defendant's molestation of her. Defense counsel indicated he had three witnesses who were prepared to testify the topic of the family meeting was N.M.'s sexual relationship with Joshua and not defendant's molestation. Defense counsel stated he did not plan "to get into details as to what exactly was going on" but he needed to cross-examine N.M. about the topic of the meeting and present evidence regarding its true topic.

The prosecutor argued the court should not reverse its decision and pointed out the defense knew about the evidence of the family meeting and had not complied with the written motion and affidavit requirements of Evidence Code section 782. Defense counsel countered it was the middle of trial and it was the prosecutor's decision to

---

[5] K.I. was the victim in defendant's prior strike conviction in 1999 under section 288, subdivision (a), a lewd and lascivious act with a child under the age of 14.

present evidence of the family meeting, which was not necessarily relevant to the case. Defense counsel argued the procedural requirements were subject to defendant's due process rights and the defense did not intend to get into specific sexual acts but to explore the true topic of the family meeting. Defense counsel noted, "If [N.M.] says no, that wasn't the topic of the meeting. It was about me having a relationship with [Joshua]. I think I should go into that on that limited basis."

The trial court noted defense counsel had "last night" to prepare a motion for that morning but stated "I realize sometimes these things arise at trial that may prevent that from taking place." After further discussion, the trial court ruled the defense was barred from questioning any witness about the topic of the family meeting "as it pertains to the sexual conduct of [N.M.] and [Joshua] . . . ." The court stated this was evidence that had been available to both parties and noted the probative value was less significant than the overall prejudice that would incur from the allegation and insinuation N.M. had a relationship with Joshua.

Defense counsel asked if, without cross-examining N.M., he was permitted to ask his own witnesses on direct if there was another topic at the family meeting. The trial court stated: "Not at this time. Prior to compliance with [Evidence Code section] 782, then we have, of course, have to have a hearing to determine again whether the probative value of that is going to outweigh--whether the probative value is going to be permitted."

Defense counsel never filed a motion under Evidence Code section 782.

## IV. Defense Evidence.

### A. Defendant's testimony.

Defendant testified in his own defense and denied all of N.M.'s allegations. He admitted he had a prior conviction in 1999 for a lewd and lascivious act with a child under 14 in violation of section 288, subdivision (a).

Regarding the pretext phone call with N.M., he believed there was a chance law enforcement was recording the conversation, but he did not deny, and in some cases

admitted, N.M.'s allegations. He did so because Lynn was sitting next to him during the phone call, crying and begging him to say whatever was needed to get N.M. out of their house and into counseling.

Early in his testimony, defendant mentioned N.M. had "an affair" with Joshua. The trial court admonished the jury to disregard defendant's testimony in that regard.

### B.    Lynn's testimony.

Lynn DeLaTorre explained she learned about defendant's prior conviction before they were married but she continued their relationship because she knew defendant was "not a hurtful person." She doubted defendant committed the prior crime and found it "hard to believe[.]" Defendant began to reside with her and her family in January of 2008 after he completed parole.

She testified N.M. never came to her with concerns about defendant and she never noticed N.M. attempting to avoid being alone with defendant.

She denied a family meeting occurred where everyone discussed defendant molesting N.M. She denied she or defendant promised N.M. that defendant would get therapy. She also denied promising N.M. that she would be careful to make sure defendant never did anything again to N.M. She testified she first learned about N.M.'s allegations of molestation when she listened to the pretext phone call.

Lynn sat next to defendant during the pretext phone call and heard the entire conversation because defendant held the phone between them. She had trouble hearing some of the conversation, but she heard N.M. make specific allegations of defendant's sexual conduct.

Lynn prompted defendant at various times to agree with whatever N.M. was saying in order to get N.M. out of the house and into therapy. She knew N.M. was hurt by all of the problems in the family "and some other issues that were going on with other people in the house." She testified her "other daughter" was a bad drug addict. She believed her daughter Shannon "or somebody" had N.M. make up the allegations. Lynn

8.

also believed N.M. was upset because their extended family rejected them after she continued her relationship with defendant, a registered sex offender.

Lynn wanted N.M. to get help, did not realize law enforcement was recording the conversation, and did not think defendant had committed the acts N.M. alleged during the pretext call. She thought N.M. would be happy if defendant agreed with the allegations as it would show they were "trying to work together." She felt responsible for the allegations against defendant because she told him to agree with N.M.'s allegations during the pretext phone call. She would not have remained with defendant had she thought the allegations were true. She did not believe N.M.'s allegations because they came when N.M. was living with Shannon and her husband, whom she described as liars, drug addicts, and noted N.M. was never close to Shannon.

When asked about defendant's "jail pearls" she described them as "pearls that have been put into the skin of [defendant's] penis." She believed N.M. knew about them from overhearing a conversation defendant had with his son.

### C.    Monica's testimony.

Monica lived with her mother and defendant "off and on" since 2008. Starting in 2009 she moved in with them and shared a bedroom with N.M. She testified defendant never molested her and expressed dismay upon hearing N.M. had testified defendant touched her. Monica never saw defendant behave inappropriately with N.M. She testified N.M. never told her about defendant's actions.

### DISCUSSION

## I.    The Trial Court Did Not Violate Defendant's Constitutional Rights or Abuse Its Discretion Under California Law.

Defendant argues the court erred when it invoked Evidence Code section 782 and prevented cross-examination of N.M. regarding the true topic of the family meeting. He further maintains the court erred in preventing him from eliciting testimony from his three witnesses regarding the true topic of that meeting. Defendant contends his rights to

due process and confrontation "outweighed" the notice and hearing requirements of Evidence Code section 782 and the trial court prejudicially erred when it denied admission of this evidence.

## A. Standard of review.

"Evidence of the sexual conduct of a complaining witness is admissible in a prosecution for a sex-related offense only under very strict conditions." (*People v. Fontana* (2010) 49 Cal.4th 351, 362.) The admissibility of such evidence is governed by two statutes, Evidence Code sections 782 and 1103, which together provide a narrow exception to the general rule of exclusion. (*Fontana, supra,* at pp. 362-363; *People v. Chandler* (1997) 56 Cal.App.4th 703, 707 (*Chandler*).) Evidence Code section 1103 bars the admission of "opinion evidence, reputation evidence, and evidence of specific instances of the complaining witness' sexual conduct," but allows the use of "evidence offered to attack the credibility of the complaining witness as provided in Section 782." (Evid. Code, § 1103, subd. (c)(1) & (5).)

Evidence Code section 782 allows evidence of prior sexual behavior to be used for purposes of impeachment if the information is relevant to the credibility of the alleged victim. (Evid. Code, § 782, subd. (a).) Because the victim's credibility is frequently at issue in the prosecution of a sex crime, the statute contains several procedural hurdles. (*Chandler, supra*, 56 Cal.App.4th at pp. 707-708). Defendants who wish to invoke the Evidence Code section 782 exception are required to submit a written motion "stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness." (Evid. Code, § 782, subd. (a)(1).) The motion must be accompanied by an affidavit, filed under seal, containing the offer of proof. (*Id.*, subd. (a)(2).) "If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant." (*Id.*, subd.

(a)(3).)  The trial court is not required to conduct a hearing if it does not accept the offer of proof as true, or finds the evidence irrelevant, or determines the offered evidence, although relevant, is inadmissible in light of Evidence Code section 352.  (*People v. Blackburn* (1976) 56 Cal.App.3d 685, 691-692; see Evid. Code, § 782, subd. (a)(2).)

If a hearing occurs, the defendant must convince the court the evidence is relevant under Evidence Code section 780 and is not inadmissible under Evidence Code section 352.  If the requisite showing is made, the court will issue an order specifying what evidence may be introduced and the nature of the questions to be permitted.  (Evid. Code, § 782, subd. (a)(4).)

"[T]he credibility exception has been utilized sparingly, most often in cases where the victim's prior sexual history is one of prostitution."  (*Chandler, supra*, 56 Cal.App.4th at p. 708.)  Earlier decisions found a victim's prior sexual experiences had no probative value in situations involving incest and child molestation.  (E.g., *People v. Fritts* (1977) 72 Cal.App.3d 319, 327.)  Evidence Code section 782 was amended in 1987 to expressly apply to sexual crimes against children (*People v. Harlan* (1990) 222 Cal.App.3d 439, 447), but the exception is still extremely limited in that context.  (See *People v. Daggett* (1990) 225 Cal.App.3d 751, 757 [in a child molestation case involving oral copulation and sodomy, evidence of the victim's exploitation by other perpetrators is relevant to the credibility of the victim's testimony describing the charged offenses "in order to cast doubt upon the conclusion that the child must have learned of these acts through the defendant."].)

The appellate court reviews a trial court's ruling on the admissibility of evidence under an abuse of discretion standard.  (*People v. Rowland* (1992) 4 Cal.4th 238, 264.)  The trial court's ruling will be upheld unless there is a clear showing of an abuse of discretion.  (*People v. Harris* (2005) 37 Cal.4th 310, 337; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 75.)

11.

**B. Analysis.**

**1. The court properly excluded cross-examination of N.M.**

Regarding cross-examination of N.M., the trial court ruled on the merits and did not prevent defendant's right to cross-examine due to a procedural defect or failure to file a motion under Evidence Code section 782. Although the court noted defense counsel failed to comply with Evidence Code section 782, the court reached the merits and ruled cross-examination of N.M. about her sexual relationship with Joshua was more prejudicial than probative. In so doing, the court accepted the offer of proof as true but determined such evidence was inadmissible for policy reasons under Evidence Code section 352. (*People v. Blackburn, supra,* 56 Cal.App.3d at pp. 691-692; see Evid. Code, § 782, subd. (a)(2).) Evidence Code section 782 expressly "reaffirms the role of Evidence Code section 352 in authorizing the trial court to exclude relevant evidence which is more prejudicial than probative. [Citation.]" (*People v. Casas* (1986) 181 Cal.App.3d 889, 896.) As such, contrary to defendant's argument, the trial court engaged in the required balancing of interests even though it did not conduct a hearing, which is not required. (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1517; see Evid. Code, § 782, subd. (a)(2).)

Further, the trial court did not abuse its discretion in making its ruling. Cross-examination of N.M. regarding her sexual conduct with Joshua would violate the purpose of Evidence Code section 782, which seeks to limit credibility attacks on a sexual abuse victim based on her past willingness to engage in sexual activity. (See *Chandler, supra,* 56 Cal.App.4th at p. 708; *People v. Franklin* (1994) 25 Cal.App.4th 328, 334; *People v. Casas, supra,* 181 Cal.App.3d at p. 895.) The Supreme Court has noted the Legislature's purpose in creating these limitations "represents a valid determination that victims of sex-related offenses deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy. [Citations.]" (*Fontana, supra,* 49 Cal.4th at p. 362.)

It was not alleged N.M. engaged in prostitution or other conduct involving moral turpitude. As such, despite defendant's arguments, a limiting instruction would not have been sufficient to protect N.M.'s privacy interests. (*Fontana, supra,* 49 Cal.4th at p. 362.) Further, contrary to defendant's argument, it is immaterial that defense counsel was not going to "belabor the issue of [N.M.'s] relationship with [Joshua]." This was not a situation where defendant hoped to introduce evidence of N.M.'s exploitation by other perpetrators to attack her credibility and cast doubt upon the conclusion N.M. must have learned of sexual acts through defendant. (*People v. Daggett, supra,* 225 Cal.App.3d at p. 757.) As the court correctly noted, even the allegation or insinuation N.M. had a sexual relationship with Joshua would be more prejudicial than probative. (Evid. Code, § 352; *Fontana, supra,* 49 Cal.4th at p. 370 [evidence of prior sexual activity "suggests a receptivity to the activity or is proof that the victim got what she deserved—neither of which is a rational or permissible inference."].)

We are also unpersuaded by defendant's reliance on *Davis v. Alaska* (1974) 415 U.S. 308 (*Davis*) and *LaJoie v. Thompson* (9th Cir. 2000) 217 F.3d. 663 (*LaJoie*).[6] In *LaJoie*, the defendant was charged with raping and sodomizing his girlfriend's niece. (*LaJoie, supra,* at p. 665.) He sought to admit evidence the victim had been raped previously by another man to support his theory the victim's injuries could have been caused by someone else and she could have obtained her sexual knowledge from another source. (*Id.* at pp. 665-666.) The trial court precluded such evidence on grounds the defendant failed to provide the State with adequate notice under the relevant "rape shield law," (*id.* at p. 665) and the defendant subsequently was convicted of rape and sodomy. (*LaJoie, supra,* at p. at 667.)

---

[6] We note *LaJoie*, a lower federal court decision, is not binding on this court. (*People v. Avena* (1996) 13 Cal.4th 394, 431.)

13.

The Ninth Circuit found the exclusion of evidence under the notice provision was an unreasonable application of clearly established law. The *LaJoie* court found the exclusion had a "substantial and injurious" effect on the verdict where the evidence arguably supported the defendant's theory the victim's injuries and sexual knowledge could have been attributed to another person. The court noted the victim told a doctor the defendant never penetrated her, and two teachers testified the victim was not credible. (*LaJoie, supra,* 217 F.3d at pp. 672-673.)

Here, unlike in *LaJoie*, the trial court did not rely on the notice provision of Evidence Code section 782 to prohibit cross-examination of N.M. and, instead, ruled on the merits. Unlike in *LaJoie*, the trial court balanced the interests regarding whether cross-examination was more prejudicial than probative. Moreover, the trial court did not preclude defendant from eliciting testimony from his own witnesses based on a failure to comply with Evidence Code section 782. Instead, defendant was invited to file such a motion. *LaJoie* is distinguishable and does not support defendant's efforts to reverse his convictions.

Likewise, defendant's reliance on *Davis, supra,* 415 U.S. 308, is misplaced. In *Davis*, the defendant was charged with a burglary involving the theft of a safe. (*Id.* at pp. 309-311.) The key prosecution witness was a juvenile, who testified he saw the defendant near where the abandoned safe was found. (*Id.* at pp. 309-310.) Although the juvenile was on probation for burglary, the trial court barred the defendant from cross-examining him regarding whether his probation had motivated him to make an ill-founded identification of defendant, either because he hoped to shift suspicion away from himself, or because the police had applied undue pressure to him. (*Id.* at p. 311.) The United States Supreme Court held that the ruling contravened the defendant's confrontation rights, as it prevented him from raising a significant inference of witness bias. (*Id.* at pp. 316-321.)

14.

Here, unlike in *Davis*, N.M. was not facing pending criminal charges which might establish a motive to fabricate testimony in order to obtain prosecutorial favor or leniency. *Davis* did not deal with admissibility of prior sexual conduct or the court's discretion to weigh such evidence in the interests of protecting the victim's rights. Despite defendant's arguments to the contrary, there is a practical difference between the error in *Davis* and the trial court's exercise of its discretion here. *Davis* is distinguishable and does not support defendant's argument the trial court violated his right to confront N.M.

**2.        Defendant forfeited his claim on appeal regarding his witnesses.**

After the trial court determined cross-examination of N.M. regarding her affair with Joshua was more prejudicial than probative, defense counsel asked if he was permitted to ask his own witnesses on direct if there was another topic at the family meeting. The trial court stated: "Not at this time. Prior to compliance with [Evidence Code section] 782, then we have, of course, have to have a hearing to determine again whether the probative value of that is going to outweigh--whether the probative value is going to be permitted."

Defense counsel never filed a written motion under Evidence Code section 782. By not filing the motion, defendant has forfeited this issue on appeal. (*People v. Sims* (1976) 64 Cal.App.3d 544, 554.)

**3.        Defense counsel did not provide ineffective assistance.**

Defendant argues his counsel was constitutionally ineffective for not filing the motion under Evidence Code section 782. To prevail on a claim of ineffective assistance of counsel, a defendant must establish two criteria: (1) that counsel's performance fell below an objective standard of reasonable competence and (2) that he was thereby prejudiced. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Mayfield* (1997) 14 Cal.4th 668, 783-784.) The defendant has the burden of showing both deficient performance and resulting prejudice. (*People v. Lucas* (1995) 12 Cal.4th 415,

436.) Regarding the second criteria, a defendant must establish a reasonable probability that, but for counsel's unprofessional error, the result would have been different. (*Strickland v. Washington, supra,* at p. 694; *People v. Samayoa* (1997) 15 Cal.4th 795, 845.) A reasonable probability is "a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra,* at p. 694.) Where a claim of ineffectiveness may be rejected due to lack of prejudice, that course should be followed. (*In re Scott* (2003) 29 Cal.4th 783, 825; *In re Cox* (2003) 30 Cal.4th 974, 1019-1020.)

Here, defense counsel may have made a reasonable tactical decision to not file a written motion under Evidence Code section 782. The evidence of N.M.'s sexual relationship with Joshua, or the evidence another topic was discussed at the family meeting, was only marginally relevant to defendant's theory N.M. wrongfully accused him. As defendant points out in his opening brief, after the pretrial ruling, defense counsel could reasonably have anticipated the trial court would deny any written motion under Evidence Code section 352. "Counsel is not required to proffer futile objections." (*People v. Anderson* (2001) 25 Cal.4th 543, 587.)

Further, defendant cannot show it was reasonably probable a different result would have occurred had he been allowed to ask his three witnesses if a different topic was discussed at the family meeting or explore whether N.M. had a sexual relationship with Joshua. First, Lynn testified no family meeting occurred where everybody discussed defendant's molestation of N.M. She further denied she or defendant promised N.M. that defendant would get therapy. She also denied promising N.M. that she would be careful to make sure defendant never did anything again to N.M.

Second, N.M. testified she saw defendant touch Monica and felt she did not have to say anything to Monica because Monica "already knew." Monica, however, denied N.M. ever told her anything, denied knowing defendant ever touched N.M. and denied defendant ever touched her.

16.

Third, defense counsel argued against N.M.'s credibility to the jury, pointing out N.M. initially lied to Montellano when N.M. indicated nothing happened between her and defendant. Defense counsel argued, "Question for you . . . was she lying then and telling the truth now or was she telling the truth then and lying now? It can't possibly be both." Defense counsel also argued against N.M.'s credibility in pointing out both N.M.'s mother and sister did not believe her allegations.

Finally, despite defendant's assertion to the contrary, the prosecutor did not capitalize on exclusion of the true topic at the family meeting during closing arguments. The prosecutor never mentioned the family meeting in summation and, in fact, told the jury the only reason the allegations came to light was because the family of N.M.'s older sister reported it.

The issue of the family meeting was not pivotal to the prosecution's case as defendant argues. Exclusion of this evidence did not deprive defendant of a right to prove the falsity of N.M.'s claim. In light of the contradictory evidence outlined above, and defendant's admissions during the pretext phone call, it is not reasonably probable a different result would have occurred had the jury heard evidence the family meeting involved a different topic or N.M. had a sexual relationship with Joshua. Defense counsel's failure to follow up with a written motion under Evidence Code section 782 does not undermine confidence in the outcome of this trial. (*Strickland v. Washington, supra,* 466 U.S. at p. 694.) Because defendant cannot establish either professional misconduct or prejudice, his claim of ineffective assistance of counsel is rejected. (*In re Scott, supra,* 29 Cal.4th at p. 825; *In re Cox, supra,* 30 Cal.4th at pp. 1019-1020.)

### 4. Defendant cannot establish constitutional violations.

Defendant claims the trial court's alleged errors violated his federal constitutional rights requiring reversal under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18. Acknowledging his trial counsel failed to file a motion under Evidence Code section 782, defendant contends he did not forfeit his constitutional right of due process

and the right of confrontation. Respondent does not offer any argument regarding whether defendant waived the constitutional issues or not.

We need not determine whether defendant forfeited or preserved his constitutional claims because, even when it is presumed defendant has constitutional claims on appeal, defendant's arguments are unpersuasive on the merits.

An evidentiary error under state law does not violate due process unless it makes the trial "fundamentally unfair." (*People v. Partida* (2005) 37 Cal.4th 428, 436.) Otherwise, without fundamental unfairness, a state law error is subject to the traditional test under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*People v. Partida, supra,* at p. 437.) Likewise, despite the confrontation clause, a trial court may limit cross-examination of an adverse witness on the grounds set forth in Evidence Code section 352. (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.) The trial court's exercise of its discretion does not violate the Sixth Amendment unless the defendant can establish the excluded cross-examination would have produced "'a significantly different impression'" of that particular witness's credibility. (*People v. Pearson* (2013) 56 Cal.4th 393, 455, quoting *People v. Brown* (2003) 31 Cal.4th 518, 545-546.) Similarly, a trial court's application of the ordinary rules of evidence "'does not impermissibly infringe on a defendant's right to present a defense.' [Citations.]" (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) "[T]he exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right." (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.)

Here, defendant has not shown a level of fundamental unfairness sufficient to demonstrate a violation of his federal due process rights. Further, defendant's right to confront was not violated because he cannot establish the excluded cross-examination of N.M. would have produced "'a significantly different impression'" of her credibility. (*People v. Pearson, supra,* 56 Cal.4th at p. 455.) When the entire record is considered, the point at issue is properly characterized as "minor or subsidiary." (*People v.*

18.

*Cunningham, supra,* 25 Cal.4th at p. 999.) Therefore, assuming any error occurred, we apply the harmless error standard under *Watson*—whether it is reasonably probable a result more favorable to defendant would have been reached in the absence of the error. (*Watson, supra,* 46 Cal.2d at p. 836.)  As analyzed above, defendant cannot make such a showing.  Thus, defendant cannot establish any constitutional violations.  (*People v. Partida, supra,* 37 Cal.4th at p. 437; *People v. Quartermain, supra,* 16 Cal.4th at pp. 623-624.)  Defendant's convictions will not be reversed.

## II.     The Abstract of Judgment Contains a Clerical Error.

Regarding count 1, the jury convicted defendant of attempted oral copulation by force or violence under sections "664 and 288a(c)."  The abstract of judgment shows the conviction of count 1 under sections "664/288A(C)."  The abstract of judgment tracks the allegation in count 1 as it was set forth in the information under sections "664/288A(C)."  Both the abstract of judgment and information appear to contain a scrivener's error.  The acts alleged in count 1 occurred "on or about and between July 1, 2010 to July 31, 2010 ...." The trial court's jury instruction given for count 1 tracked the statutory language of former section 288a, subdivision (c)(2).[7]

On its own motion, an appellate court with jurisdiction of a case may order correction of clerical errors contained in the abstract of judgment.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.)  "An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize."  (*Id.* at p. 185.)

---

[7]     This section stated: "Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."  (Former § 288a, subd. (c)(2).)

Because the abstract of judgment does not match the jury instruction for count 1, this matter is remanded to the trial court to correct the abstract of judgment to reflect conviction on count 1 under section 664 and former section 288a, subdivision (c)(2).

## **DISPOSITION**

This matter is remanded to the trial court to correct the abstract of judgment to reflect conviction on count 1 under section 664 and former section 288a, subdivision (c)(2), in effect as of the dates alleged in the information.  The trial court shall then forward the amended abstract of judgment to the appropriate authorities.  The judgment is otherwise affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
FRANSON, J.

20.