Filed 6/10/24  P. v. Perine CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER THOMAS PERINE,<br><br>        Defendant and Appellant. | A166548<br><br>(San Mateo County<br>Super. Ct. No. 21-SF-003391-A) |

Christopher Thomas Perine appeals a judgment convicting him of penetration by a foreign object and infliction of a corporal injury on a dating partner and sentencing him to a total of six years in prison.  He contends the trial court erred (1) by excluding evidence of the victim's sexual activity with another person, which he asserts would have provided an alternate explanation for the injury the victim claimed Perine inflicted during the penetration; (2) by not instructing the jury on any lesser included offenses to the corporal injury charge; (3) by admitting evidence of his 2014 conviction of misdemeanor domestic violence; and (4) by failing to stay the concurrent prison term imposed on his corporal injury conviction in violation of Penal Code section 654.[1]  We agree that the concurrent term imposed on Perine's corporal injury conviction should be stayed but find no other prejudicial error.

---

[1] All undesignated statutory references are to the Penal Code.

Accordingly, we stay the sentence imposed on count 2 and affirm the judgment in all other respects.

## BACKGROUND

Perine was charged by information with one felony count each of penetration by a foreign object (§ 289, subd. (a)(1)(A)); corporal injury on a dating partner (§ 273.5, subd. (a)); and stalking with two prior convictions (§ 646.9 subds. (a), (c)).[2]

At trial, evidence was presented that Perine met and started dating the victim in October 2015. The victim testified that the relationship ended in April 2020 after a verbal disagreement, although she did acknowledge having sexual intercourse with him one time after the breakup. She claimed that, despite returning his key and letting him know that she was blocking him from contacting her phone, he continued to leave voice and text messages and drive by her home. In February and March 2021, Perine sent the victim several unwanted, sexually explicit texts, which were read to the jury. He also left several unwanted, sexually explicit voicemails on her phone that were played for the jury. Some of the messages referenced Perine wanting to engage in sexual activity in the alleyway behind the victim's house, but the victim testified that it was not something that had happened previously between them.

On March 17, 2021, the victim heard Perine's truck, which she described as black with a large yellow panel on the side, idling in the alleyway next to her house. She went out and asked him to leave. Perine left but returned on March 20 sometime between 5:00 p.m. and 7:00 p.m. She

_____

[2] The stalking charge was based on conduct occurring after the sexual assault. Because the jury acquitted Perine on that count, we omit from our recitation of the facts testimony relevant to only that count.

2

heard his truck in the alleyway again and thought, "Oh no, not again." When she went outside to ask him to leave, he grabbed her left arm, pinned her against the garage, and put his finger in her vagina. She felt him scratch her vagina when he penetrated her. She said "stop," got out of his grasp, and ran into her house.

Her family came home approximately 15 minutes after the assault. When she told them what happened, they encouraged her to file a police report, which she did that evening. An officer arrived at her home and advised her to go to the hospital for a forensic examination. The forensic nurse who examined her approximately six hours after the assault testified that there was a "very superficial, shallow abrasion" on her vagina. Although it was a minor abrasion, it was visible to the naked eye, and there was a definite border between the abraded area and normal tissue. She did not see bruising on the victim at the time of the exam, but because bruising could develop later, she instructed her to report any bruising for documentation. The doctor who reviewed the photographs from the exam confirmed that the photographs depict a "small, difficult-to-see" injury.

The next day, when the victim noticed that a large, finger-shaped bruise had formed on the underside of her left arm, she called the police as instructed. A photograph of the bruise taken by a police officer two days after the assault was introduced as an exhibit at trial.

Also on March 21, the victim received a voicemail message from Perine at 10:17 p.m. in which he said, "I don't understand uh, this uh, avoidance accomplishes nothing just more built-up lust and desire, so. Then I pull up in your alley and make a scene and you get wet and you still won't suck my cock."

The victim's neighbor testified that on March 20, at around 6:00 p.m. or 7:00 p.m., he saw a black truck with a yellow stripe idling in the alleyway behind his home.

Perine denied sexually assaulting the victim. He testified that he last engaged in sexual activity with her in February 2021, and at that time, he believed they were still in a relationship. He admitted, however, that he left several graphic voicemails on the victim's phone in February and March and texted her repeatedly, and that she had not returned any of his calls or texts. He also admitted that when he went to her house on March 17, she asked him to leave. He explained, however, that she told him she was expecting company but that she would call him later. Although she did not call him by the weekend, he did not understand that, by not responding to him, the victim was indicating that she did not want to see him.

With regard the March 20 assault, Perine testified that he did not see the victim at all that day. He, his six-year-old son, and a friend went to a local restaurant and stayed for about an hour. After leaving the restaurant, he went directly home and watched a movie with his son. Video surveillance showed the group leaving at 5:35 p.m., which Perine believed was actually one hour later due to daylight savings time. He claimed to have been driving a white truck at the time because his black-and-yellow truck was in the shop.

On cross-examination, Perine acknowledged leaving the victim the phone message the day after the assault in which he referenced pulling up in the alley but claimed that it was not an admission of guilt. Rather, it was a reference to the fact that they previously had sex in the alley.

Perine's friend, who was with him at the restaurant and who owned an auto repair shop, testified that Perine left the restaurant driving a white

4

truck and that Perine's black-and-yellow truck had been in his shop since February.

The jury found Perine guilty of penetration by a foreign object and inflicting corporal injury on a dating partner, but was unable to reach a verdict on the stalking charge.

The court sentenced Perine to concurrent middle terms on each count for a total of six years in prison.

## DISCUSSION

### I.     Exclusion of the Victim's Sexual History

Perine argues that the trial court erred by excluding evidence of the victim's sexual activity with another person in February 2021, which he asserts would have provided an alternate explanation for the injury the victim claimed he inflicted during the digital penetration. He contends that this evidence was relevant to the victim's credibility and admissible under Evidence Code sections 1103 and 783, and that precluding that cross-examination deprived him of his right to present a defense under the Sixth Amendment to the United States Constitution and due process.

### A. Legal Background

A criminal defendant has a "fundamental constitutional right to a fair opportunity to present a defense." (*Crane v. Kentucky* (1986) 476 U.S. 683, 687.) "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, [citations], the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " (*Id.* at p. 690.) " ' "[T]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." ' " (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678 (*Van Arsdall*).) Trial courts, however,

5

"retain wide latitude . . . to impose reasonable limits on[] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (*Id.* at p. 679.)

"Evidence of the sexual conduct of a complaining witness is admissible in a prosecution for a sex-related offense only under very strict conditions." (*People v. Fontana* (2010) 49 Cal.4th 351, 362; Evid. Code, § 1103, subd. (c).) Evidence of the complaining witness's prior sexual conduct may be admissible when offered to explain injuries the prosecution alleges were the result of the defendant's conduct where the evidence "is relevant under [Evidence Code] section 780 and is not barred by [Evidence Code] section 352." (*Fontana,* at p. 363.) "In such circumstances, 'it is not the fact of prior sexual activity as such that is important, but something about the special circumstances under which that prior sexual activity took place that renders it important.' [Citation.] Where the prosecution has attempted to link the defendant to physical evidence of sexual activity on the complainant's part, 'the defendant should unquestionably have the opportunity to offer alternative explanations for that evidence, even though it necessarily depends on evidence of other sexual conduct.' " (*Ibid.*)

Evidence Code section 780 generally identifies factors a jury may consider in determining the credibility of a witness that have a "tendency in reason to prove or disprove the truthfulness" of that witness's testimony, including statements made by the witness that are inconsistent with any part of the witness's testimony and the existence or nonexistence of any fact testified to by the witness. Under Evidence Code section 352, the court has discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue

consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Evidence Code section 782, subdivision (a) sets forth the procedure for determining the admissibility of such evidence:  It requires (1) that the defendant submit a written motion "stating that the defense has an offer of proof of the relevance of evidence of the sexual conduct of the complaining witness that is proposed to be presented and of its relevance in attacking the credibility of the complaining witness," (2) that the motion "be accompanied by an affidavit in which the offer of proof shall be stated," (3) that the court shall determine if the "offer of proof is sufficient," and if so, "order a hearing" to "allow the questioning of the complaining witness regarding the offer of proof made by the defendant."  If the court determines, following the hearing, that the evidence is relevant under Evidence Code section 780 and not inadmissible under Evidence Code section 352, then the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions allowed.  (Evid. Code, § 782, subd. (a)(4); *People v. Fontana*, *supra*, 49 Cal.4th at p. 362.)

## B. Factual Background

Prior to trial, Perine moved to admit evidence that the victim suffered a vaginal injury during sexual activity with a different person three weeks prior to the offense.  His motion argued that if the victim denies the injurious sexual contact with another person at trial, he intends to testify that she alluded to another sexual relationship and showed him the injury in February 2021.  The prosecution opposed the motion.

At an evidentiary hearing, Perine testified that on February 26, 2021, the victim told him that she had been "touched inappropriately."  She was "too embarrassed" to tell him who had touched her but "smirked" when he

7

asked if it was her friend who had recently visited. She later removed her clothing and asked him to look at a "small tear" on her labia.

The victim denied having a sexual relationship with her friend and testified that that the interaction described by Perine never happened.

The nurse who had examined the victim after the assault testified that the abrasion she observed in the victim's vaginal area was consistent with having been inflicted six hours prior but that it was "highly unlikely" that the injury was inflicted three weeks ago. To still be visible at the time of the exam, the prior injury "would have had to have been very, very deep and have a lot of bleeding and probably would have needed sutures." She explained that genital mucosal tissue heals quickly and a shallow abraded area such as the abrasion she observed on the victim could heal in a couple of days. She did not believe the injury resembled an older, faint scar.

Following the hearing, the court denied Perine's motion. The court found that the evidence was not relevant based on the nurse's testimony that even a significant injury would have healed in the three weeks between the alleged prior incident and the sexual assault. The court found further that the evidence was subject to exclusion under section 352 because Perine's "testimony has such limited probative value, if any, and would create a danger of confusing the issues or misleading the jury."

### C. Analysis

Perine contends the trial court erred in concluding that the evidence was not relevant. He argues that the court improperly "relied on its evaluation of the credibility of the evidence each side presented and found Perine's proposed testimony was not relevant because [the nurse's] testimony was more persuasive."

8

Perine is correct that the trial court improperly evaluated the credibility of Perine's testimony regarding the incident in February when the victim allegedly showed him the scratch. (See *People v. Chandler* (1997) 56 Cal.App.4th 703, 711 ["The rape shield statutes do not permit the trial judge to make a credibility determination at the in camera hearing"].) That error, however, is of no consequence insofar as the trial court expressly stated that, even if it found Perine's testimony to be credible, it would deny the motion based on the nurse's undisputed testimony. Perine did not, nor could he, offer testimony as to whether the scratch he saw in February would have healed within three weeks. The nurse's testimony that the injury she saw was fresh and not made three weeks earlier was undisputed and necessarily established that the victim's prior sexual activity was not a possible alternate cause of the victim's injury. Perine's proffered testimony was therefore not relevant under Evidence Code section 780 because it would not contradict the victim's testimony that Perine caused her injury. For the same reason, the court did not abuse its discretion in excluding the evidence under Evidence Code section 352.[3]

Perine's argument that the exclusion of this evidence violated his federal constitutional rights to confrontation and cross-examination fares no better. As this court recently observed, "[p]roper application of *Van Arsdall* requires threshold consideration of whether the trial court exercised sound discretion under state law evidentiary standards in limiting the scope of cross-examination. The high court's acknowledgment that trial courts 'retain wide latitude . . . to impose reasonable limits on such cross-examination'

_____

[3] In light of this conclusion, we need not reach Perine's remaining arguments that the court erred in excluding his testimony as hearsay and by failing to analyze the prejudicial effect of the proffered testimony.

[citation] leaves room for an evaluation of admissibility under the Evidence Code, tested under the deferential abuse of discretion standard of review governing such discretionary questions [citation]. If the trial court excluded 'evidence of marginal impeachment value' [citation] or otherwise merely carried out the routine evidentiary function of controlling the scope of permissible cross-examination, the answer to this initial evidence question will generally be yes—the trial court was within its discretion—and the inquiry comes to an end. There was no error, under either state law or under the Sixth Amendment." (*People v. Castaneda-Prado* (2023) 94 Cal.App.5th 1260, 1282, fn. omitted.) Because the proffered testimony had no probative value, its exclusion did not impinge upon Perine's constitutional rights.

## II.     Lesser Included Offenses on Count 2

Perine contends the trial court prejudicially erred by not instructing the jury sua sponte on spousal battery (§ 243, subd. (e)(1)), simple battery (§ 242) and simple assault (§ 240), which are lesser included offenses of corporal injury on a dating partner (§ 273.5).

"[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense [that] find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no [substantial] evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162, overruled on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237.) When a defendant denies the charged offense in its entirety, the "substantial evidence" required to trigger this duty is defined as " ' "evidence from which a jury composed of reasonable [persons] could . . . conclude []" ' " that the lesser offense, but not the greater, was committed." (*People v. Cruz* (2008) 44 Cal.4th 636, 664; *People v. DePriest* (2007) 42 Cal.4th 1, 50

10

[instructions required only where substantial evidence defendant committed lesser, but not greater, offense].)

Prejudice stemming from the failure to instruct on a lesser included offense in noncapital cases is state law error analyzed under the harmless error test in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195–196, 201.) " '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 955.) "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*Id*. at p. 956.)

As relevant here, the charged offense requires that the defendant inflict a traumatic injury, defined as a "wound, or external or internal injury . . . whether of a minor or serious nature, caused by physical force." (§ 273.5, subd. (d).) None of the lesser offenses require infliction of an injury. (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952 ["It is *injury* resulting in a traumatic condition that differentiates [a section 273.5 offense] from lesser offenses"].)

In closing, the prosecutor argued that the bruise inflicted when Perine grabbed the victim and pinned her to the garage was a "minor injury" sufficient to satisfy the traumatic condition requirement. He described the bruise for the jury as "visible two days later. . . . It wasn't a light, small, faint bruise. It's a sizable bruise."

11

On appeal, Perine does not dispute the existence of the bruise or that the bruise qualifies as a traumatic injury. He argues, as he did in the trial court, that the evidence tying the bruise to the assault was not credible. He notes that the victim did not report having been grabbed on her arm or having any pain in her arm at the time of the exam and only reported the bruise the following day. He contends that instructions on the lesser included offenses were required because the evidence "presented the issue of causation."

We think it is doubtful that a reasonable jury *could* have concluded on the evidence before it that Perine grabbed the victim and pinned her to the wall without causing an injury so that it could have found Perine guilty of one of the lesser offenses and not the charged offense. Assuming, however, the jury could have reached that conclusion, it is not reasonably likely that the jury would have done so had it been instructed on the lesser included offenses. (See *People v. Reeves* (2001) 91 Cal.App.4th 14, 53 [the question "is not what a jury could have done, but what a jury would likely have done if properly instructed"].)

The evidence that Perine's actions caused the bruise was overwhelming. The victim testified that Perine grabbed her left arm with his hand and his forearm was outstretched parallel to the ground and across her chest pinning her to the garage. The next day she noticed a large, finger-shaped bruise on the underside of her left arm. The location of the bruise is consistent with her description of how Perine grabbed her. She testified that the bruise was on a part of her arm she would not have bumped into something like a door or a counter, and she noticed it the morning after the assault. Her delayed discovery is also consistent with the nurse's testimony

12

that bruises do not appear immediately and that she would not have expected it to be noticeable at the time of the exam.

Contrary to Perine's suggestion, the jury's question regarding count 2 does not support the conclusion that the failure to instruct on the lesser offenses was prejudicial. The jury asked for clarification on whether "willfully inflicted a physical injury" as used in the instructions meant "intended to cause harm" or "intended to act but harm was incidental." The court responded, "Defendant 'willfully inflicts' injury when a direct application of force by defendant upon victim causes injury." Perine argues that "[t]his focus on the traumatic condition shows the 'deliberations were close,' something that in turn shows the prejudice from the court's failure to give the jury an alternative to the all-or-nothing choice posed by its failure to instruct on lesser included offenses." On the contrary, the jury's question is premised on a finding that Perine's act caused the physical harm and merely sought clarification as to whether he had to have intended to cause the harm to be found guilty.

Accordingly, we conclude that the failure to instruct on any lesser offenses, if error, was harmless.

## III. Admission of Perine's Prior Domestic Violence Conviction

Evidence Code Section 1109 provides an exception to the general rule codified in Evidence Code section 1101, subdivision (a) that prior acts may not be used to prove a defendant's conduct on a specified occasion. Under section 1109, prior acts of domestic violence are admissible when the defendant is charged with a criminal offense "involving domestic violence . . . if the evidence is not inadmissible pursuant to [Evidence Code] section 352." (Evid. Code, § 1109, subd. (a)(1).) If evidence is admitted under Evidence Code section 1109, a jury may infer from the evidence that the defendant had

13

a disposition or propensity to commit other offenses involving domestic violence and may infer that he was likely to commit and did commit the current domestic violence offense. (*People v. Ogle* (2010) 185 Cal.App.4th 1138, 1143; *People v. Johnson* (2010) 185 Cal.App.4th 520, 528.)

We apply an abuse-of-discretion standard to a trial court's admission of prior acts of domestic violence under Evidence Code section 1109 and its refusal to exclude the evidence under Evidence Code section 352. (*People v. Johnson, supra,* 185 Cal.App.4th at p. 539; *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.)

Prior to trial, the prosecution moved to admit a certified copy of Perine's 2014 conviction of misdemeanor domestic violence (§ 273.5, subd. (a)).[4] Perine opposed the motion, arguing that his prior conviction was "wholly irrelevant" and should be excluded under Evidence Code section 352. The court granted the motion, admitting "evidence of the actual conviction without testimony." At trial, Perine admitted that he was convicted of misdemeanor domestic violence in 2014 and the prosecutor introduced, as exhibit 42, certified copies of the charging document, Perine's signed plea form, and the docket from the prior case.

On appeal, Perine contends that the trial court abused its discretion in admitting the evidence of his 2014 conviction. He argues that the probative value of the conviction was weak because the jury, without any details of the underlying offense, could not determine whether there was any similarity between the prior offense and the charged offenses, and because the prior conviction was based on conduct that occurred approximately six years before

---

[4] The prosecution also sought to admit testimony by the victim of the 2014 crime to testify as to the underlying facts of the crime. The trial court deferred ruling on the admissibility of her testimony, and ultimately the victim was not called as a witness at trial.

the current offenses. We disagree that the probative value of this evidence was weak. The admission of the fact of Perine's prior conviction was relevant to show a pattern of domestic violence and a propensity to commit domestic violence. As the prosecutor argued in closing, Perine's 2014 conviction can be used to show he had the intent to commit the charged crimes and the knowledge that his actions in this case were wrong. Admission of the fact of the conviction by the certified record of conviction was not unduly prejudicial and posed little danger of confusing the issues before the jury. Accordingly, the trial court did not abuse its discretion in admitting the fact of Perine's prior conviction.

To the extent Perine's challenge is directed to the *additional* information contained in the documents that were admitted to prove the prior conviction, we question whether Perine properly preserved his argument. Perine notes that the docket and plea form revealed that he had pled guilty in exchange for the dismissal of two felony charges, false imprisonment and assault with force likely to create great bodily injury, and that other entries on the docket showed that a protective order was issued and he was ordered to complete 104 hours of domestic violence counseling and to serve one day in jail. The plea form and docket, however, were not before the court when it ruled that the "certified prior" would be admissible at trial. When exhibit 42 was introduced and admitted into evidence at trial, defense counsel did not object on the ground that the documents contained prejudicial information or request that the extraneous information be redacted. The trial court's prior ruling that the fact of the conviction was admissible did not excuse counsel's obligation to object to the admission of the documents used to prove that fact if he believed they contained additional information that was inadmissible under Evidence Code section 352. (*People*

15

*v. Kennedy* (2005) 36 Cal.4th 595, 612, disapproved on other grounds by *People v. Williams* (2010) 49 Cal.4th 405, 459 ["appellate court's review of the trial court's admission of evidence is [] limited to the stated ground for the objection"].)

The Attorney General, however, does not argue that Perine forfeited this argument on appeal. Instead, the Attorney General focuses on the admissibility of the fact of the prior conviction and asserts rather summarily that the "details of appellant's prior conviction, including that he pled no contest, that two charges were dropped, and that [the victim] obtained a protective order, were not unduly prejudicial."

The additional information contained in the documents to which Perine now objects has limited, if any, probative value and thus, in our view, should have been redacted. The potential error, however, was harmless. (*People v. Cole* (2004) 33 Cal.4th 1158, 1195 [improper admission of evidence of other crimes reviewed for error under *People v. Watson* (1956) 46 Cal.2d 818]; *People v. Scheid* (1997) 16 Cal.4th 1, 21 [erroneous admission of irrelevant evidence reviewed for error under *Watson* standard].) "Under the *Watson* standard, the erroneous admission of [evidence] warrants reversal of a conviction only if the appellate court concludes that it is reasonably probable the jury would have reached a different result had the [evidence] been excluded." (*People v. Scheid, supra,* at p. 21.)

The extraneous information contained in exhibit 42 was not particularly prejudicial. The details of the dismissed charges were not included in the documents, and the charges themselves—false imprisonment and assault with force likely to create great bodily injury—are no more egregious than the sexual assault charged in the present case. The fact that Perine was subjected to a restraining order in 2014 is also not particularly

16

prejudicial given the unchallenged testimony that in 1998 Perine was arrested for violating a restraining order obtained by his ex-wife after he was convicted of criminal stalking. Although it is possible that the jury resented the lack of punishment on the dropped charges or the arguably lenient punishment for the charge to which he pled guilty, we do not find it reasonably likely that the jury convicted him of the charged offenses for these reasons. The prosecutor's closing argument did not reference the allegedly extraneous information contained in the relevant exhibit and the jury was properly instructed regarding the People's burden to prove the charged offenses beyond a reasonable doubt and the limited purpose for which it could consider evidence of another incident of domestic violence not charged in this case. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30 [courts presume jury followed instructions on use of other crimes evidence].) Accordingly, we see no reasonable probability that Perine would not have been found guilty had the additional information been redacted from exhibit 42.

## IV.    Section 654

Perine was sentenced to the middle term of six years for his conviction for digital penetration and to a concurrent three-year middle term on his conviction for domestic violence. He contends that the trial court erred by failing to stay the sentence imposed on his domestic violence conviction pursuant to section 654. We agree.

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Section 654 " 'applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute

17

but nevertheless constituted an indivisible transaction. . . . If all the offenses were *incident to one objective*, the defendant may be punished for any *one* of such offenses but not for more than one.' [Citation.] Whether offenses are 'indivisible' for these purposes is determined by the 'defendant's intent and objective, not the temporal proximity of his offenses.' [Citation.] 'If [a] defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." ' [Citation.] The application of section 654, thus, 'turns on the *defendant's* objective in violating' multiple statutory provisions. [Citation.] Where the commission of one offense is merely ' "a means toward the objective of the commission of the other," ' section 654 prohibits separate punishments for the two offenses." (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1214–1215.)

Perine contends that his sentence on the domestic violence conviction must be stayed because the offense was part of a continuous course of conduct undertaken with a single intent—it was the means of committing the sexual penetration. It is undisputed that Perine's acts of grabbing the victim's arm, pinning her to the wall, and digitally penetrating her constituted a continuous course of conduct. The Attorney General argues, however, that section 654 is inapplicable because Perine's intent and objective differed for each act: Perine grabbed the victim, pushed her against the wall, and bruised her arm "to dominate her and inflict pain" and he digitally penetrated her for sexual gratification.

Although Perine did not raise a section 654 objection during the sentencing hearing, " '[e]rrors in the applicability of section 654 are corrected

18

on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' " (*People v. Hester* (2000) 22 Cal.4th 290, 295.) If the trial court does not stay a sentence pursuant to section 654, and offers no factual basis for its decision, we presume the court made the necessary findings to impose separate sentences without violating the statutory proscription against multiple punishment. (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045.) A trial court's imposition of multiple sentences must be sustained on appeal so long as its factual findings, express or implied, of multiple acts are supported by substantial evidence. (*People v. Cruz* (2020) 46 Cal.App.5th 715, 737.)

Here, the record does not support an implied finding that Perine harbored separate intents with regard to the two offenses. Nothing in the record suggests that Perine intended to inflict the injury at issue in this case. The bruise was incidental to the force used by Perine to pin the victim against the wall in order to digitally penetrate her. At sentencing, the trial court described the crimes as follows: "The jury found that the defendant used force against the victim causing injury and, while doing so, committed sexual assault, pinning her up against a wall with force, rendering her helpless, and digitally penetrating her." Accordingly, section 654 requires that the sentence imposed on one of the counts be stayed. (See *People v. Latimer* (1993) 5 Cal.4th 1203, 1216–1217 [Section 654 prohibits punishment for kidnapping and rape where "the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes"].)

Although a trial court has discretion under section 654 to select which term to stay, Perine does not suggest that remand is necessary in this case. Given the court's comments at sentencing, there is no likelihood that the court would have stayed the sentence imposed on the penetration count

rather than the corporal injury count. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand for resentencing is appropriate "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion' "].) Accordingly, we modify the judgment to stay the sentence imposed on count 2.[5]

## DISPOSITION

The judgment is modified to stay the sentence imposed on count 2 and affirmed in all other respects.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

[5] We note that the abstract of judgment incorrectly reflects imposition of six-year terms on both counts. This error can be corrected when the court prepares the amended abstract indicating that the sentence imposed on count 2 has been stayed pursuant to section 654.

20